JOHN R. BARTLEY by Next Friend, WM. H. BARTLEY, Respondent, v. JOHN H. TRORLICHT *et al.*, Appellants.

St. Louis Court of Appeals, April 5, 1892.

1. **Action by Servant Based on Injuries Caused by Defective Elevator:** SUFFICIENCY OF THE EVIDENCE. The evidence in this action, which was a suit by a servant against his master for damages for personal injuries caused by the fall of an elevator, is considered, and it is *held* sufficient to establish that the elevator was defective, and that the master was negligent in not discovering the defects, and to warrant the submission of the cause to the jury.

2. ————: SPECIFICATION OF DEFECTS: ELECTION. The petition in the cause having specified a number of defects in the appurtenances of the elevator, which were not inconsistent with each other nor repetitions of each other, but were separate and cumulative specifications of different defects, it is *held* that the plaintiff could not be required to elect on which of these specifications he would go to trial.

3. ————: DIMINISHED EARNING CAPACITY AFTER MAJORITY: PLEADING. When the plaintiff in such an action is a minor, he need not specially plead as damages that his earning capacity after he will have attained his majority will be diminished; moreover, a general allegation of permanent disability to labor by reason of the injuries complained of embraces a claim for such damages.

4. ————: ————: EVIDENCE. Such damages may be allowed in favor of a minor, though there is no direct evidence of them, their amount being referred to the judgment of the jury as a matter of common experience.

5. **Evidence of Special Damages Which Have Not Been Pleaded:** WAIVER OF OBJECTION. *Held,* in the course of discussion, that if evidence of special damages is admitted without objection, the right of objection on the ground that the damages were not specially pleaded is lost.

6. **Master and Servant:** EXTENT OF MASTER'S OBLIGATION TO FURNISH PROPER APPLIANCES. A master is under an absolute duty to use reasonable care and inspection in regard to the machinery and appliances placed by him in the hands of his servant for use. As between himself and his servant he cannot relieve himself from this responsibility by delegating or leaving to another the care of the machinery, and his obligation to his servants in this regard will, therefore, not be affected by the fact that he rented the machinery as part of a building, nor by the further circumstance that a third person, as employe of his landlord, has been intrusted with the supervision of the machinery.

7. **Contributory Negligence on Part of a Child:** INSTRUCTIONS. An instruction in this cause defined the care, which the plaintiff, who was a child, was bound to exercise, as such care "as boys of his age, experience and discretion usually exercise." *Held, per curiam,* that this instruction was faulty, in that it made the requisite care depend upon the discretion of this particular child instead of the discretion reasonably to be expected of a boy of his age, but that the error was not prejudicial so as to necessitate a reversal of the judgment in his favor. But *held* by THOMPSON, J., that the instruction was correct.

*Appeal from the St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*Lubke & Muench,* for appellants.

*J. A. Talty* and *A. R. Taylor,* for respondent.

THOMPSON, J.—This action is brought to recover damages, alleged to have been sustained by the plaintiff in consequence of personal injuries, received by him through the falling of an elevator in the building of the defendants in St. Louis, which was being operated at the time by the plaintiff as an employe of the defendants. The action was brought in the circuit court of the city of St. Louis, but a change of venue was taken

by the plaintiff to the circuit court of St. Charles county, where there was a trial by a jury, which resulted in a verdict and judgment in favor of the plaintiff in the sum of $2,000; to reverse which the defendants prosecute this appeal. Numerous errors are assigned, which we shall separately consider, in what seems to be their proper order.

I. The plaintiff was driven by successive demurrers to his third amended petition. In that petition he charged that, on the day of the accident and for a long time prior thereto, the elevator and machinery and appliances thereto were in a dangerous and defective condition, and unsuitable and unfit for the use to which the defendants were applying the same. He then proceeded to make ten distinct and separate specifications of those defects. After the jury were sworn and before any testimony was taken, the defendants moved the court to require the plaintiff to elect on which one of the numerous specifications of defects in the elevator and machinery the plaintiff would go to trial. The court overruled this motion, and the defendants excepted. There was plainly no error in overruling this motion. The specifications of defect were not inconsistent with each other, nor were they mere repetitions of each other, but they were separate and cumulative specifications of different defects in the condition of the elevator and machinery annexed thereto. The case, therefore, presented no resemblance to the case, where an answer sets up inconsistent defenses in separate paragraphs, or where a petition sets up inconsistent grounds of action in separate counts. Suppose that the trial court had sustained the motion, and then the defendant had elected to go to trial on all the specifications; upon what ground then, known to the rules of procedure, could his judgment have been reversed, because he had failed to introduce evidence tending to prove all of

them?  Or, if the plaintiff had elected to go to trial upon *all* of them, could the court have required him to reject one or three or five or any number of them?

II.  The next assignment of error, which we shall consider, is that the court erred in submitting the case to the jury.  We do not take this view.  The evidence is quite voluminous, but, without undertaking to set it out in detail, it is sufficient for the disposition of this point to say that it tended to show that the defendants kept a carpet store in the city of St. Louis, having four floors or stories; that they used, for ascending and descending between these various floors or stories, an elevator known as an Otis elevator; that this elevator had been in use about eleven years at the time of the accident; that it had no counter balance or descending weight, such as is now generally used on elevators, but which was not usual on this pattern of elevator at the time when it was constructed; that it frequently went with a jerking motion, and often too slowly; that it frequently caught and bound at the top, that is, against the top of the fourth stage or floor, when it would be necessary to get it down with the aid of the engineer in the basement by his starting the fly wheel; that it often worked in a shackly way; and, finally, that on the day of the accident it fell, stunning the plaintiff, who at the time was operating it, and inflicting serious injuries upon him.  It appeared that after the fall, some parts of it were found broken, and that especially a certain pinion was found broken in two in consequence of an old and undiscovered break therein.  But there was also evidence tending to show that this flaw or defect was in such a position, that it could not be discovered without taking apart the drum of the elevator, and that this would take three men fifteen hours. Without going into the countervailing evidence, which is not necessary for the purpose of this question, we

conclude that there was substantial evidence to take the question of the negligence of the defendants to the jury. Then, as to the contributory negligence of the plaintiff, the evidence clearly did not make out a case of contributory negligence on his part, such as would have enabled the judge as a matter of law to say, either upon the evidence furnished by the plaintiff or upon an undisputed or unchallenged state of evidence, that he had been guilty of contributory negligence.

III. It is next assigned for error that the court, at the request of the plaintiff, gave an instruction to the jury on the measure of damages, which authorized the jury to give damages "for any loss of earnings after he shall have arrived at the age of twenty-one years." Two objections are made to this ruling: *First*. That there was no distinct averment in the petition, that the plaintiff would sustain damages in the way of loss of earnings after he should arrive at the age of twenty-one years. *Second*. That there was no evidence directly tending to show that he would sustain such a loss of earnings. We do not regard this assignment of error as well taken. The argument that loss of such earnings in an action for personal injuries is in the nature of *special damages*, and must be specially averred in the petition, is predicated on the decision of the supreme court in the recent case of *Mellor v. Railroad*, 105 Mo. 455, 464. In that case the court *in banc*, reaffirming an opinion written by BARCLAY, J., of division number 1, declares the proper rule to be: "Loss of earnings is a kind of injury which is not regarded as a necessary consequence of such acts as are complained of here, and, therefore, is not embraced within the plaintiff's general allegations of damages. It is one sort of special damages, and, consequently, must in somewise be counted upon to constitute a basis for evidence on the subject." It will be perceived, upon an examination of

the case in which this rule is declared, that the loss of earnings there under consideration was the loss of *past earnings* by an adult who, at the time of the injury, was employed at a definite salary. There is nothing in the opinion to indicate that the rule was intended to extend to the loss of future earnings,—or rather to the damages which may be supposed to accrue from an impaired earning capacity through a total or partial physical disability. It has never been the practice, in drawing petitions in actions for damages for personal injuries in this state, to make special allegations as to the damages which will accrue from the diminution of the future earning capacity of the plaintiff or the person injured, in order to let in evidence of such an element of damage, or in order to warrant the jury in giving damages under that head. The two Missouri cases, cited by the supreme court in support of the proposition, were both cases of past damages,—in one of them a doctor's bill already incurred (*O'Leary v. Rowan*, 31 Mo. 117), and the other past traveling expenses. *State to use v. Blackman*, 51 Mo. 319.

Upon the next branch of the argument, that there was no evidence tending to show what the loss of the earning capacity of the plaintiff after arriving at the age of twenty-one years, in consequence of the injury, would be, it is to be observed that this is answered by the recent unreported decision of the supreme court in the case of *Rosenkrats v. Railroad.* In that case it was held not error for the court to instruct the jury, in the case of a very serious injury to a child four years of age, that they might award damages "for loss of earnings after he shall have attained the age of twenty-one years, although there was no evidence specially bearing upon the question how much such loss of earnings would probably amount to." The opinion in that case, which is written by Mr. Justice MACFARLANE, concedes that, in

the case of an adult, proof should be made of "previous physical condition and ability to labor or follow his usual avocation, as well as his condition since the injury, to enable the jury properly to find the pecuniary damage." But the court also says: "What may or may not be done by anyone in the future depends upon so many contingencies that prospective loss of earnings cannot be susceptible of direct or conclusive proof, even in the case of adults. Nevertheless, as has been seen, such damages are uniformly allowed. The impairment of the earning capacity of one in his infancy is as great a damage to him as though he had not been injured until the day he reached his majority. That he would have an equal right to compensation logically follows. The plaintiff had never earned anything, and what his ability for labor, or his capacity for earning money in business pursuits, will be in the future no one can tell with any certainty. It is properly held in such cases, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience and enlightened conscience of the jurors, guided by the facts and circumstances in the case."

The propriety of this conclusion is further supported by the fact, that what damages such future loss of earning capacity will probably entail upon a plaintiff refers itself to a question of common experience, which, if attempted to be proved could only be proved by the *opinions* of witnesses; and on such a question the opinions of the witnesses would not be controlling any more than on a question of value, but the jurors would have a right, in deciding it, to use their own judgment and experience.

The conclusion of the supreme court, that it is not necessary in the case of an infant to introduce evidence specially bearing upon the question of the damages

which would accrue from his loss of future earning capacity, makes it more clear that such damages need not be specially alleged. They are the damages which may naturally be expected to flow from a physical disability, either total or partial, and consequently fall within the legal definition of general damages. The right to recover such damages is fairly embraced in a petition, such as the one before us, which contains an express averment of a permanent disability to labor accruing from the injury complained of. Furthermore, it was held by the supreme court in *Mellor v. Railroad*, *supra*, that even in the case of past damages for loss of earning capacity, the objection that such damages are not claimed in the petition is untenable, where evidence tending to show such damages is admitted without objection. Such was the case here. General evidence tending to show a permanent disability, which would include a loss of earning capacity, was admitted without objection; nor could an objection have been successfully interposed.

IV. The next assignment of error is that the court, at the request of the plaintiff, gave an instruction defining the care required of the plaintiff to be such care "as boys of his age, experience and discretion usually exercise." I am of opinion that this was a correct definition. In *Williams v. Railroad*, 96 Mo. 283, it is said, speaking with reference to this question: "If the boy used that care which may be reasonably expected from boys of his age and capacity, then he was not guilty of contributory negligence," etc. In *Eswin v. Railroad*, 96 Mo. 296, it is said: "The plaintiff ought not to recover, until there is a clear finding that this boy, at the time of the accident, was using the care and caution which might be expected of one of his age and capacity." In *Ridenhour v. Railroad*, 102 Mo. 287, it is said: "The standard of his duty was such

reasonable care and diligence as characterized the average boy of his age." In *Lee v. St. Louis, etc., Co.,* 6 Mo. App. 578, the language of the abstract is: "The test is, not the conjecture of the jury, but the care which a boy of ordinary caution would have used." In *O'Flaherty v. Railroad,* 45 Mo. 73, quoted by this court in *Duffy v. Railroad,* 19 Mo. App. 389, the language is: "All that is necessary to give a right of action for an injury inflicted by the defendant is, that the injured person should have exercised care and prudence equal to his capacity." It would require a great refinement to discover any substantial distinction between these definitions and that given in the instruction complained of. The standard established in all of them is the ordinary or reasonable care, which is the standard of the law. The ordinary care, in the case of adults, is the care which adults in the given situation ordinarily exercise; ordinary care, in the care of infants, is the care which infants at a given age, capacity, experience or discretion ordinarily or usually exercise. And this is the "reasonable care" of the law; because, if the law exacted of an infant, as the right to recover damages for a grievous injury, a higher degree of care than the ordinary care of infants of his age, situation, experience, capacity and discretion, it would establish a rule which, as against him, would be unreasonable. But I must add that my associates do not quite agree with me as to this instruction, as stated at the close of this opinion.

V.   The next assignment of error relates to the giving of the following instruction at the request of the plaintiff: "5. If the jury find from the evidence in this case that the plaintiff, John R. Bartley, was, on the eighteenth day of December, 1888, a minor about the age of nearly fifteen years; and if the jury further find from the evidence in this case that on said day the plaintiff was in the service of the defendants at

their place of business in the city of St. Louis as an elevator boy, and that it was at said time the duty of the plaintiff to operate a passenger elevator between the floors of defendants' said place of business for the defendants.

"*And if the jury further find from the evidence that said elevator and the machinery and appliances thereof were on said day and for a long time prior thereto in a defective condition,* AND UNFIT FOR THE USE TO WHICH DEFENDANTS WERE APPLYING THE SAME.

"*And if the jury further find from the evidence that said elevator was in a defective condition,* and that the brake of the engine was defective and did not work.

"And if the jury further find from the evidence that defendants or either of them, or their agent having charge of keeping said elevator and appliances in repair, either knew, or by the exercise of ordinary care could have known, of said defective condition of said elevator and brake, and by the exercise of ordinary care could have repaired said defects before plaintiff's injury as herein set forth.

"And if the jury further find from the evidence that, on the eighteenth day of December, 1888, the plaintiff was operating said elevator for the defendants in the discharge of the duty of his employment, and that whilst so operating said elevator, owing to said defective condition of said elevator and brake, said elevator was caused to fall and injure said plaintiff.

"And if the jury further find from the evidence that, before and at the time of the fall of said elevator, the plaintiff was exercising ordinary care, the plaintiff is entitled to recover."

We are not quite able to understand the nature of the objection to this instruction, except that defendants complain of the part which they have put in italics, and especially of the clause which they have put in

small capitals. It is to be observed that the different paragraphs of this instruction are connected by the conjunction "and." It is, therefore, to be taken as a whole, and the jury could only understand that it is to be considered as a whole. They could not infer from the parts which have been put in italics and small capitals that they were authorized to find for the plaintiff, if the elevator or machinery was defective in any other particular than in such a particular as made it dangerous to those in it when it was in motion. It would be absurd to suppose that a jury, under this instruction, could fall into the error of supposing that they could give damages, because the elevator might have been unfit in some particular which made it not a desirable elevator for use, as that it moved too slowly, or would not carry passengers enough at one time. We think this, taken as a whole, a good instruction.

VI. Error is next assigned upon the giving, at the request of the plaintiff, of the following instruction: "11. If the jury find from the evidence in this case that the plaintiff, prior to and on the eighteenth day of December, 1888, was in the service of the defendants as an elevator boy, and that it was the duty of the plaintiff, under said employment, to run defendants' elevator between the floors of defendants' business house mentioned in the evidence, then it was the duty of the defendants to have exercised ordinary care under the circumstances to keep said elevator and the machinery thereof, in a condition of repair reasonably suitable and safe for the plaintiff to operate the same.

"And if the defendants intrusted this duty to one Scott, the engineer, the acts of said Scott pertaining to said duty, were the acts of defendants.

"And if the jury find from the evidence that the pinion of said machinery was broken and out of repair, and insufficient for the work for which it was used; and

if the jury find from the evidence that said Scott knew, or by the exercise of ordinary care under the circumstances would have known, of such defective condition of said pinion, and could by the exercise of ordinary care have repaired said defect and averted injury from plaintiff; and if the jury find from the evidence that plaintiff, at the time of and just preceding his injury, was exercising ordinary care; and if the jury find from the evidence that plaintiff, while in said elevator in the discharge of his said duty, was injured by a fall of said elevator; and if the jury find from the evidence that said elevator was caused to fall and injure plaintiff by reason of said defective pinion, then plaintiff is entitled to recover.''

The objection is leveled against so much of this instruction as authorized a verdict upon the hypothesis of the accident happening in consequence of the broken pinion. The nature of the objection will best be seen from the following quotation from the printed argument submitted by counsel for the appellants: ''Plaintiff offered no evidence whatever about this pinion. Defendants brought that into the case by their testimony, and showed conclusively that there was nothing but an inherent and unknown hidden defect in it, not discoverable by anyone while the pinion was in place. Defendant's proof of this was in no manner contradicted, and no issue was left for the jury to decide as to this pinion. To authorize the submission of an issue, there must be evidence to sustain a finding, which the court would not feel itself compelled to set aside.''

An examination of the evidence, so far as it relates to this instruction, makes it appear that the only evidence in the case, touching the subject of the pinion being broken, was furnished by two witnesses of the defendants, one of them the engineer of the owner of

the building who had the elevator and machinery in his charge, and the other the superintendent of the firm of machinists under whose direction the elevator had been taken apart and repaired eight years before.    From the testimony of the former of these witnesses it appeared that the elevator had not been taken to pieces for the purpose of inspecting it since that time, though it had been frequently repaired in respect of the supplying of ropes and other external matters that were liable to wear out.    The evidence of such witnesses showed that this pinion was an essential part of the machine; and we infer from their testimony, and from the course of their examination by counsel for the defendants, that it was the defendants' theory that the elevator broke and fell in consequence of the latent defect in this pinion. The jury had a part of this pinion before them, and, in the examination of the witnesses, a sketch is referred to from which it might be inferred that a sketch of the machine was used upon the trial, and that the jury had a much better idea of the nature of it than we can gather from the written evidence without any sketch or model.    Now, the evidence of the engineer called as a witness for the defendants was to the effect that after the accident happened this pinion was found broken; that it contained a new break, and also an old break; that the old break was on the external side, but on the side which was in such a position with reference to the drum of the machine, that it could not be seen at all when the pinion was in position, without removing the drum; and the other of these witnesses testified that it would take three men fifteen hours to remove the drum so that this break in the pinion could be discovered, and there was no countervailing evidence.    Nevertheless, we think that, in view of the fact that these witnesses showed that this pinion was an essential part of the machine, that the old break in it probably

produced the accident, and that it had not been taken apart for inspection for eight years, the jury were authorized, in view of the obvious danger to human life of any essential part of such a machine getting out of order so as to render the machine liable to fall, to conclude that the defendants may have been negligent in not requiring it to be taken apart and inspected for so long a period as eight years,—especially when such an inspection would probably have discovered this defect, and have prevented the accident. Nor were the jurors bound to accept the opinion of a machinist that it would take three men fifteen hours to remove the drum so as to discover the defect. That was a matter of expert and opinion evidence; and, with such a description of the machine as the jurors had before them, they may have been entitled to conclude that it would not take so long, or subject defendants to so great an expense or inconvenience. But in any event it was an expense or inconvenience, which is to be balanced against the sacredness of human life; and we, therefore, find ourselves unable to say that the court erred in allowing the jury to find for the plaintiff upon the hypothesis contained in this instruction. It is quite immaterial for the purposes of the case, whether this evidence had been adduced by the plaintiff or by the defendants. If the defendants gave evidence which tends to help out the plaintiff's case, the plaintiff has a right to avail himself of that evidence, and to stand upon it before the jury.

VII. In our judgment the next error is not well assigned. It is that the court erred in giving the plaintiff's instruction marked 4. This instruction was as follows: "4. If the jury find from the evidence that, prior to and on the eighteenth day of December, 1888, the plaintiff was in the employment of the defendants as an elevator boy, and that it was a part of his duty as

such to run defendants' elevator between the floors of defendants' place of business mentioned in the evidence.; and if the jury find from the evidence that the valves of the engine which operated said elevator were in a defective condition, and that the defendants, or their agent in charge. of keeping said machinery in repair, either knew, or by the exercise of ordinary care under the circumstances would have known, of said defective condition of said valves before plaintiff's injury, and could by the exercise of ordinary care have repaired said defect and have averted plaintiff's injury; and if the jury further find from the evidence that, whilst plaintiff was running said elevator, by reason of said defective condition of said elevator, it fell and injured plaintiff; and if the jury further find from the evidence that plaintiff was exercising ordinary care at the time of and just preceding his injury, then the plaintiff is entitled to recover.''

The objection to this instruction is that there was no evidence tending to support the hypothesis contained in it, that the valves were defective. We do not so understand the record. Thomas Williams, who was called as a witness for the plaintiff, testified that he had been a stationary engineer for about twenty-four years. Although he was not acquainted with the particular elevator which fell in this case, yet he had run an elevator of the same pattern made by Otis, the patentee. He testified that, if such an elevator were in good condition, it would not, when stationary, sink or drop unless the rope was pulled. He also testified that such an elevator would not stick when the car was at the roof, if in proper order. When asked, what in his opinion would cause the elevator to act that way, he said, among other things, that it might be caused by a leaky valve. Another witness gave similar testimony. Now, the plaintiff gave evidence tending to show that

the elevator did act that way; and this we think was substantial evidence, though possibly of a weak character, tending to show that the accident may have been caused by a leaky valve, and authorizing the court to submit the case to the jury on that hypothesis.

VIII. It is next assigned for error that the court refused the following instruction submitted by the defendants: "2. If from the evidence the jury believe that the elevator in question did not belong to Trorlicht, Duncker & Renard, but was a part of the building, and was leased by defendants as a part of said building; and if the jury further believe that defendants, in using said elevator in their occupation of said building, exercised ordinary care and prudence, and that the elevator fell because of some hidden defect in its construction unknown to defendants, and which defect they would not have discovered by ordinary care, then the jury will find for the defendants.

"By ordinary care is meant that degree of care, which an ordinarily prudent person would exercise under the like circumstances."

We see no error in refusing this instruction, for the reason that every hypothesis contained in it, except that expressed in the first sentence, is contained in another instruction which the court did give at the request of the defendants. That instruction is as follows: "The court also instructs the jury that defendants, Trorlicht, Duncker & Renard, are not liable in this suit simply because the boy was in their employ and was hurt. Defendants were not insurers. The gist of the action is the charge of negligence, and that must be established by a preponderance of proof against defendants. If the proof bearing on the charge of negligence does not preponderate in favor of plaintiff Bartley, then a case is not made out against defendants, and the jury should find for them.

"The court also instructs the jury that they must be satisfied from the evidence that the injuries to his back, here complained of by plaintiff, were caused by the fall of the elevator, and that this fall resulted because of the want of ordinary care on the part of the defendants.

"If from all the evidence the jury believe that the fall of the elevator happened because of a hidden defect in its construction, which defect a person of ordinary care and prudence would not have discovered with ordinary care, and that defendants did not know thereof, then you should find in favor of defendants.

"Or if from the evidence the jury believe that the elevator and machinery connected therewith were reasonably safe to be used, then the defendants had the right to use the same in the exercise of ordinary care. They were not bound to have absolutely safe machinery."

The hypothesis in the above refused instruction that the elevator did not belong to the defendants, but was a part of the building, and was leased by the defendants as a part of the building, was an immaterial hypothesis, and might have operated to mislead the jury; and the presence of that hypothesis in the instruction, therefore, constituted a good ground for refusing it as drawn. Whether the elevator and machinery used in opening it was leased as a part of the building, or not, was utterly immaterial to the liability of these defendants. A master is under *an absolute duty* to use reasonable care and inspection in regard to the machinery and appliances placed by him in the hands of his servants to use, to the end that they shall be reasonably safe for the uses intended. If he rents a building with such machinery and appliances in it, he cannot, so far as affects his liability to his servants, cast this duty upon his landlord, so as to exonerate himself.

IX. For the same reason the court committed no error in refusing the third instruction tendered by the defendants, which was as follows: "3. The court also instructs the jury that, if from all the evidence the jury believe that the falling of the elevator complained of here was caused by the neglect of Mr. Scott, the engineer, the defendants are not liable, and you should find for the defendants."

This instruction is erroneous in point of law. It is argued in support of it that the evidence tended to show that Scott was employed by the owner of the building to attend to all the elevators in the building, and to run the steam engine operating them. This is true; and in that regard Scott was an *independent contractor*, so to speak, with reference to these defendants. But the rule which exonerates a party for the negligence of an independent contractor applies only between that party and a stranger; it does not apply between him and his own employe or servant. The absolute duty of exercising reasonable care, to the end that the machinery and appliances placed in the hands of his servants will not endanger their lives or members, rests upon him equally, whether he attempts to exercise that duty through an independent contractor, through another servant, or by himself in his proper person. When the defendants entered into an arrangement—no matter with whom—by which they intrusted the care and inspection of this elevator and machinery to Scott, the engineer, the latter became their vice-principal to that extent and for that purpose, so far as their servants were concerned. The correct legal doctrine under this head is stated by Mr. Justice FIELD, in a decision of the supreme court of the United States, thus: "It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient

and safe materials, machinery or other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, *no duty required of him for the safety and protection of his servants can be transferred*, so as to exonerate him from such liability." *Northern Pacific Ry. Co. v. Herbert,* 116 U. S. 647. All of the decisions of our supreme court and of this court state this duty of the master in positive terms, which necessarily imply that he cannot cast it off either upon any independent contractor or upon another of his servants. Thus, in the case of *Porter v. Railroad,* it is said: "It is the duty of the employer to provide for his servants, good, safe and properly constructed machinery and implements for carrying on his business, and to use reasonable care and precaution for the safety of the employes. By this, however, it is not meant that he is an insurer of their safety and under an absolute obligation to provide safe machinery and implements, but only that he is to use reasonable care and precaution in procuring them and keeping them in good order and condition." 71 Mo. 76. So in a case in this court, where the subject was carefully considered, it is said: "While the employer is not an insurer of the absolute safety of the machinery or appliances he furnishes, he is bound to provide such instruments with which to carry on his business, as are reasonably safe, secure and sufficient for that purpose. If he fails to provide and maintain such, and, in consequence of this breach of duty on his part, the employe suffers injuries, the employer is responsible for the injuries thus caused." *Clowers v. Railroad,* 21 Mo. App. 213, 217. In another case it was said, speaking with reference to the liability of a railway company toward its employes: "It was the duty of the defendant to furnish to its employes cars

reasonably safe and sufficient for the purpose for which they were to be used by such employes; and, in absence of notice to the contrary, the deceased had the right to assume that the car which he mounted in the line of his duty, and on which he was attempting to set or tighten the brakes when it broke, was so safe and sufficient.'' *Parsons v. Railroad*, 94 Mo. 286, 292. But we need not extend quotations to show that this duty is the duty which the law casts upon the master, nor repeat arguments to show that, the law having cast the duty upon the master, he cannot transfer it to an independent contractor.

This disposes of all errors which have been assigned by the defendants, and we conclude that the record presents no substantial error prejudicial to them. It is, therefore, ordered that the judgment be affirmed. All the judges concur in this result, and in the reasoning of the opinion, with the exception of the fourth paragraph discussing the instruction touching contributory negligence. My associates are of the opinion that that instruction is faulty, inasmuch as it makes the care to be exercised by the boy depend upon the discretion of the boy, instead of the discretion which might reasonably be expected of a boy of that age; they do not, however, consider the error prejudicial so as to warrant a reversal of the judgment on that ground alone.