Gildersleeve v. Overstolz.

EDWARD J. GILDERSLEEVE, Respondent, v. HER-
MAN OVERSTOLZ, Appellant.

St. Louis Court of Appeals, December 3, 1901.

1. **Damages:** INJURY TO BUSINESS: EVIDENCE. An injury to a
business is a legitimate element to consider in establishing the dam-
ages the owner has suffered by his adversary's misdoing.

2. ———: ———: ———. And the question of whether the jury
shall be allowed to assess damages for such injury, depends on the
sufficiency of the evidence relied on to prove what loss was due to the
defendant's conduct.

3. ———: ———: ———: EVIDENCE OF LOSS OF BUSINESS. If
the evidence of loss of business occasioned by the conduct of de-
fendant, is so weak and unsatisfactory as to leave the injury to the
business or its extent, wholly conjectural, the jury should not be
permitted to consider it as an element of damages to be awarded;
but if the evidence proves with reasonable certainty such injury re-
sulted from the defendant's unwrongful act, and also with reasonable
certainty the amount of loss it occasioned, the aggrieved party is
as much entitled to be whole on that score as any other.

4. ———: ———: ———: MALICE. And in the case at bar, the
defendant's conduct was so lawless and malicious that on that ground
alone, he might properly be held responsible for damages more in-
definite than in ordinary instances where elements of malice and op-
pression are lacking.

5. ———: ———: ———: EVIDENCE: NET INCOME. In the
case at bar, it was proper to permit the plaintiff to prove the net
income of his business before the defendant wrongfully dispossessed
him, as a criterion of what he lost by said dispossession.

6. **Punitive Damages.** An award of punitive damages is warranted
and even called for when the defendant's conduct in the premises is
lawless, high-handed, oppressive and in utter disregard of plaintiff's
rights.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

Respondent was the tenant of appellant in the occupation of premises in St. Louis used as a ticket broker's office. In said premises plaintiff had a large amount of tickets, counters, chairs, partitions and other property used in conducting his business. There were lawsuits between the parties in respect to the tenancy, notice to vacate served by the appellant on respondent, and other occurrences out of which a bitter feeling grew.

One evening after business hours, and after his office had been closed and Gildersleeve had gone, the agents and servants of Overstolz, acting under the direction of the latter, broke into the office through the rear wall, tore down a partition which belonged to Gildersleeve, barred up the doors so that he could not gain admission, and put the room in charge of some private detectives. The next day was Sunday and Gildersleeve was refused admission. On the following Monday, between two and three o'clock in the morning, said agents and servants of defendant demolished the front of the premises, with a view to erecting another front, and continued to make alterations and repairs about the place until they were stopped by a writ of injunction.

This action was brought to recover compensatory and punitive damages for the trespass.

The defense was that Gildersleeve had agreed to surrender possession on the day defendant broke into the room; that defendant had leased it to another tenant, bound himself

in this lease to make certain repairs and alterations, and entered on the premises for that purpose.

A verdict was returned in plaintiff's favor for two hundred and one dollars actual, and five hundred dollars punitive damages. Judgment was rendered accordingly, and defendant appealed.

It may also be stated that Overstolz had served a notice on Gildersleeve in November, terminating the tenancy the last day of December. Gildersleeve had made arrangements to move to another office as soon as the party occupying it moved out, which was expected to happen on the tenth day of January, five days subsequent to the forcible entry by Overstolz. He did not get that office, however, until the seventeenth day of January.

Certain property belonging to plaintiff was damaged; some linoleum which was on his floor, signs, counters, the partitions and other effects. Some of these were demolished and others were injured by the entry of defendant's servants on the premises and the work done by them towards making alterations and repairs.

*Schulenburg & Meyer* for appellant.

(1) Loss of profits can not be made the measure of damages where the profits are conjectural, speculative and dependent largely on chance. 1 Sutherland on Damages, 141; Brigham v. Carlisle, 78 Ala. 243; s. c., 56 Am. Rep. 28. An estimate of probable earnings of an agent, derived from proof of the amount of his collections and commissions before the breach without proof relating thereto, would be too speculative to be admissible. Lewis v. Ins. Co., 61 Mo. 533. (2) To justify the awarding of punitive or vindictive damages there must be malice, wantonness or recklessness on the part of the defendant, coupled with the doing of an unlawful act with a

wrongful purpose. Pruiett v. Quarry Co., 33 Mo. App. 18; Welsh v. Stewart, 31 Mo. App. 376; State v. Jungling, 116 Mo. 152; Franz v. Hilterbrand, 45 Mo. 121. A trespass does not become a malicious trespass because it is done intentionally or knowingly. Pruiett v. Quarry Co., 33 Mo. App. 18; Welsh v. Stewart, 31 Mo. App. 376.

*Hiram N. Moore* for respondent.

(1) The finding of actual damage is well supported and made under proper instructions. (2) Such damages are not speculative or remote, but were the immediate and necessary and natural result of the wrongful acts of the defendant. In Grieaud v. Railroad, 33 Mo. App. 467, the court says: "If the plaintiff at the time of the injury was engaged in legitimate business, from which pecuniary profits had arisen and future profits might reasonably be expected, which business was interrupted or suspended in consequence of disabilities ... inflicted by the negligence of defendant, the loss of such anticipated profits is properly the subject of compensation. ... It is true, as said in some cases, that what the plaintiff earned in his profession before, is not necessarily evidence of the fact that he would earn the same amount thereafter if not disabled, but that objection goes to the weight of the evidence and not to its admissibility. It is certainly a proper item for the consideration of the jury, since otherwise, professional men, whose probable earnings can not be measured by a fixed money standard, would be at great disadvantage to prove any damages resulting from the loss of probable employment." Probable profits form a legitimate element of damages when their extent can be shown with reasonable certainty. Stewart v. Patton, 65 Mo. App. 21. (3) The finding of punitive damages was fully warranted by the evidence, it having been well established that plaintiff's acts were not only unlawful but

done with a reckless disregard of plaintiff's rights, and that he knowingly and maliciously committed the wrong. Wamsganz v. Wolff, 86 Mo. App. 215; State v. Jungling, 116 Mo. 165.

GOODE, J.—The first assignment of error which requires attention relates to the measure of damages, the court having instructed the jury to take into consideration, among other elements of damage, any injury which they might find from the evidence was directly caused to plaintiff's business by the tortious entry of defendant's servants into the office and the dispossession of plaintiff.

Much difference of opinion, gradually tending towards reconciliation, has existed as to the right to recover for injury to business and loss of profits both in actions on contracts and those sounding in tort; and as the question frequently arises, it may be worth the pains to investigate it with some fullness. The damages recoverable depend somewhat on the form of the action; at least in certain jurisdictions. Less stringency of proof has been sometimes required to establish the damages in cases of tort than in those of contract, for reasons which need not now be enumerated, nor their soundness explored. They have resulted in permitting an injury to business by a loss of profits, to enter into the damages awarded for a tort to person or property, in jurisdictions where a loss of that kind has been excluded in actions on covenants, express or implied; such as actions for a breach of a covenant for quiet enjoyment. This distinction is illustrated by the cases of St. John v. The Mayor, 13 How. Pr. 527, and Mack v. Patchin, 42 N. Y. 167; in the first of which, the plaintiff had been deprived of the use of her business premises by an obstruction placed in front of them by the city, and she was allowed to recover for loss of profits during the continuance of the obstruction, her action being in the nature of trespass; whereas, in Mack v. Patchin,

where the plaintiff had been ousted from the possession of a leasehold granted him by the defendant, by a foreclosure proceeding, and plaintiff sued on the covenant for quiet enjoyment contained in the lease, he was only permitted to recover the excess of the value of the unexpired term of the lease over the rent reserved, although his eviction was due to the fault of the lessor. The rule in this State is the same, when the action is on a lease. Hughes v. Hood, 50 Mo. 350. It is well to say, however, that the decisions have not been entirely harmonious; in some instances courts have granted compensation for loss of profits and injury to business for cases sounding in contract (Jacques v. Miller, L. R. 6 Ch. Div. 153; Stewart v. Lanier House Co., 75 Ga. 582; Poposkey v. Munkwitz, 68 Wis. 322), and occasionally, where the action was in trespass, relief of this kind has been denied (Hayden v. Sewing Machine Co., 54 N. Y. 221; Ward v. McGrath, 1 Phila. 88). But the drift has been towards making the profits lost on account of a tort, whether it be a personal injury or a trespass to property, part of the compensation to which the aggrieved party is entitled. Recent authorities which appear to decide that damages can not be recovered for an injury to a business or loss of profits, will, we think, be found on examination not to prescribe any such rule as one always appropriate; but to rest on the uncertainty of the proof in the particular case in regard to the amount of profits lost.

The reason given for rejecting this kind of damages is that profits are too remote and speculative, too much the subject of guesswork or conjecture, and not capable of definite proof. And here it is proper to remark that the rule denying a recovery of uncertain damages, is directed rather against damages which are contingent and insufficiently proven to have resulted from the breach or tort charged; not merely such as are uncertain in amount; for damages are constantly

awarded when their amount can not be computed with precision for lack of a criterion by which to measure them. Wakeman v. Wheeler Mfg. Co., 101 N. Y. 205. Still, the amount of the loss must not be entirely conjectural. The case just cited illustrates the present trend of opinion in favor of reimbursing an injured party for business losses; and, as apropos to that mooted point, thus discusses the subject of uncertainty in damages: "The damages must not be merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow, or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they can not be allowed. They are nearly always involved in some uncertainty and contingency; usually, they are to be worked out in the future; and they can be determined only approximately, upon reasonable conjectures and probable estimates. They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they can not be recovered because they can not be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits can not be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage." A fortiori is this true if the action sounds in tort. It was in the sense that the losses were too remote, that the Supreme Court of this State held certain profits, of which the plaintiffs claimed they had been deprived, by virtue of the defendant's failure to complete a steamboat in the time agreed in one case, and by a

wrongful seizure of a steamboat in another, to be no proper basis of damages. There were too many contingencies in the way of profits being earned. Taylor v. Maguire, 12 Mo. 313; Callaway Min. & Mfg. Co. v. Clark, 32 Mo. 305.

But it is far from being true that one's business losses arising from another's misconduct are always remote or speculative. Loss of custom and profit by the destruction or interruption of a business, is often as precisely provable as any other sort of unliquidated damages, and provable with greater precision than several elements which are constantly taken into account; for instance, the damages for pain and suffering incident to a personal injury. Courts have come to recognize this truth; and the rule to be deduced from most of the later cases is, that when the evidence discloses with reasonable definiteness what profits were lost by an alleged injury, damages may be given to compensate the loss; but if the evidence is so vague, as to leave it wholly conjectural or speculative, whether the plaintiff would have màde a profit, or how much he would have made, if the defendant had not been derelict, loss of profits should not enter into the award.

The rule is thus stated by Sedgwick, with many citations in support of it: "Where it clearly appears that the defendant has interrupted an established business from which the plaintiff expected to realize profits, the plaintiff should recover compensation for whatever profits he makes it reasonably certain he would have realized. Here, as everywhere, the question is one of fact, whether the profits can be proved with reasonable certainty." Sedgwick on Damages (8 Ed.), sec. 182.

Another writer says: "The objection usually made to the allowance of damages for the loss of profits, when they are disallowed, is that such damages are remote and uncertain or speculative. They are not remote when the premises were leased for the particular business, and the action is against the

lessor or his successor in interest by the lessee or his assignee, whether it be on the covenant for quiet enjoyment or in tort; nor are they remote to a wrongdoer who destroys or impairs a business open to his observation." 3 Sutherland on Damages, sec. 867.

In the leading case of Allison v. Chandler, 11 Mich. 542, where the defendant, a landlord, wrongfully ejected plaintiff, a tenant, from his premises in which he was conducting a jewelry business, the court held plaintiff was entitled to damages for injury to his business.

So, in White v. Mosley, 8 Pick. 356, where the action was trespass done in breaking down and destroying a mill-dam, damages were assessed for the interruption of the use of the mill and the diminution of profits occasioned thereby. It was objected that such damages could not be allowed; but the court said: "The interruption of the use of the mill and the diminution of plaintiffs' profits on that account were alleged in the declaration and proved at the trial, and we think this was right. The plaintiffs are entitled to recover for all the damages they suffered by reason of the trespass."

Lawrence v. Price, 45 Md., 123, was a controversy arising from the obstruction of a race leading to plaintiff's distillery. It was held plaintiff was entitled to recover all the consequences resulting from the wrongful act of the defendant, including the loss of the use of the distillery during the time of the obstruction.

In Walter v. Post, 4 Abb. Pr. 382, plaintiff's place of business, which was a tailor shop, was trespassed on by the defendant in unlawfully repairing a party wall. Though the proof of injury to the business was somewhat unsatisfactory, the court held it should not have been withdrawn from the consideration of the jury, but they should have been told plaintiff could not recover for the loss in his business without proof that he had sustained such loss.

In Goebel v. Hough, 26 Minn. 252, a landlord made an unauthorized entry on his tenant's premises for repairs and it was ruled: "When a regular and established business, the value of which may be ascertained, has been wrongfully interrupted, the true general rule for compensating the injured party is to ascertain how much less valuable the business is by reason of the interruption and allow that as damages. This gives him only what the wrongful act deprived him of. The value of such a business depends, ordinarily, on the profits derived from it. Such value can not be ascertained without showing what the usual profits are, nor are the ordinary profits incident to such a business, contingent or speculative in the sense that excludes profits from consideration as an element of damages."

Schule v. Brokhahus, 80 N. Y. 614, was an action for trespass strongly resembling the one at bar. Plaintiff was lessee of certain premises in which he carried on the business of manufacture of pictures, lithographs and furniture. Defendant tore down a portion of the wall between said premises and his own building without right. The court said: "The most serious question presented is that arising upon the exception to the refusal to charge 'that there is no proof of loss of profits.' It can not be affirmed that there was no evidence on the subject. It was shown how much less the business was during the months when the injury occurred than during the corresponding months of the preceding year, and the profits upon the business. . . . . Loss of profits consequent upon a tort as well as a breach of contract are allowed, provided they are such as might naturally be expected to follow from the wrongful act, and are certain both in their nature and in respect to the cause from which they proceed. Griffin v. Colver, 16 N. Y. 498; Marquart v. La Farge, 5 Duer. 565. The evidence, to say the least, was rather weak and inconclusive, but the question as to the sufficiency of the evidence was

not very distinctly made.    When the evidence of the amount of business and profits during the corresponding months of the previous year was offered, the objection made was that it was incompetent for the purpose of proving loss of profits. This objection was not tenable.  The fact of the extent of business done previously, was competent to be shown.    If a business is entirely broken up, the amount previously done, is ordinarily pertinent upon the question of the amount which might subsequently be done, and the same is true of a partial interruption of business."

Denison v. Ford, 10 Daly (N. Y.) 412, was where a tenant was evicted by a landlord.    The tenant was not allowed to recover for loss of profits, but that action was construed to be, in effect, one for a breach of the covenant for quiet enjoyment, as the eviction consisted only in some of the doors to plaintiff's premises being closed so that he did not have light enough to carry on his business.    It was held the trespass was technical and the only damage was on the covenant for quiet enjoyment.

In Chapman et al. v. Kirby, 49 Ill. 211, the defendant had wrongfully declared a forfeiture of plaintiffs' lease of certain premises as a planing mill, and had severed a shaft which supplied the mill with power, thus stopping the machinery.    Plaintiffs brought an action for damages and the question arose as to their right to recover for losses in business, taking into consideration therewith the amount of business which they had been doing previous to the accident.    It was ruled they were entitled to recover for the breaking up of their business and the diversion of their customers to other places.    This case considers the difference in the measure of damages in actions on a lease and those in trespass.    It says, in reference to the exception for allowing the jury to award compensation for loss of business:  "As to the estimate of losses sustained by the breaking up of their established bus-

iness, there would seem to be no well-founded objection. We all know that in many, if not all, professions and callings, years of effort, skill and toil are necessary to establish a profit-able business, and that when established it is worth more than capital. Can it then be said that a party deprived of it has no remedy, and can recover nothing for its loss, when produced by another? It has long been well-recognized law, that when deprived of such business by slander, compensation for its loss may be recovered in this form of action. And why not for its loss by this more direct means? And of what does this loss consist, but the profits that would have been made had the act not been performed by appellants? And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable period preceding the time when the injury was inflicted, leav-ing the other party to show that by depression in trade, or other causes, they would have been less? Nor can we expect, that in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty."

These are all the authorities we deem it necessary to notice outside this state. The precise question in hand appears not to have been decided here.

In Schlemmer v. North, 32 Mo. 206, which was trespass by a tenant against his landlord for entering the premises, tearing down the tenant's buildings and ousting him, it was ruled the plaintiff could only recover the value of the rent of the unexpired term and not also the value of the demolished buildings. While the cause is similar to this one, it is obvious from the opinion, that the measure of damages as declared was simply because the plaintiff's total loss was only the re-mainder of his term, as the building became the property of

the landlord.   The rule was not laid down to govern in all cases of tortious entry by landlords and ouster of tenants.

Loss of business profits is undistinguishable in principle from loss of individual earnings; and a plaintiff who has sustained personal injury by the negligence of a defendant is compensated for the loss of anticipated professional or other earnings, if it can be shown with reasonable certainty they would have been realized but for his injury.   Rosenkranz v. Railway Co., 108 Mo. 9; Griveaud v. Railway Co., 33 Mo. App. 458; Bartley v. Trorlicht, 49 Mo. App. 214.   And so if the action is for breach of contract, the profits which would probably have been realized had the contract been performed, enter into the damages to be awarded.   Stewart v. Patton, 65 Mo. App. 21.

We conclude then, that an injury to a business is a legitimate element to consider in establishing the damages the owner suffered by his adversary's misdoing; and that in every case, the question of whether the jury shall be allowed to assess damages for such injury, depends on the sufficiency of the evidence relied on to prove what loss was due to the defendant's conduct.   If the evidence is so weak and unsatisfactory as to leave the injury to the business, or its extent, wholly conjectural, the jury should not be permitted to consider it as an element of the damages to be awarded; but if the evidence proves with reasonable certainty such injury resulted from the defendant's wrongful act, and also with reasonable certainty the amount of loss it occasioned, in other words, if there is a basis in the evidence for a finding on the question, the aggrieved party is as much entitled to be made whole on that score as any other.   In the case in hand, the defendant's conduct was so lawless and malicious that on that ground alone, he might properly be held responsible for damages more indefinite than in ordinary instances where elements of malice and oppression are lacking.

When is the evidence as to harmful results to a business positive enough to be weighed by the jury and when too vague? In the nature of the case, the only way ordinarily available to prove the damages, is by a comparison of the profits before and after the tort. "An injury to business must consist mainly of a loss of profits, though it often involves other incidental losses." 3 Sutherland on Damages, sec. 870. And in a case between a landlord and his tenant it was said: "Probably value and net profits are convertible terms as applied to a business. . . . If the plaintiff shows himself entitled to recover damages to his business, the character, extent and value of his established business when the lease was executed and before, will furnish a guide to the jury in assessing the prospective and probable value thereof." Poposkey v. Munkwitz, 68 Wis. 322; Simmons v. Brown, 5 R. I. 299.

The case of Shepard v. Milwaukee Gas Light Co., 15 Wis. 318, was where the defendant had broken its agreement to supply the plaintiff's store with gas. Plaintiff was allowed to show the nature and extent of his business, that it could not be conveniently transacted without gas and that defendant's failure to furnish gas made his store less attractive to customers and diminished his business. This case ably reviews others, in actions both of contract and tort, which hold that profits may not be recovered; and demonstrates, we think, the unsoundness of that rule. Commenting on one (Cincinnati v. Evans, 5 Ohio St. 594) in which it was ruled the plaintiff could not show the profits lost by the defendant's trespass, the opinion says: "They are material to this purpose only so far as they tend to show how much the plaintiff lost by the interruption. And it is obvious to every mind that he lost the profits he would have made if the interruption had not occurred. How could he prove the 'value of the business to him,' without showing the amount of profits he would have realized according to its ordinary course? How

Gildersleeve v. Overstolz.

could that value be estimated without including an estimate of the profits? If there is any process by which it may be done, I confess my inability to perceive it; and it seems to me, therefore, that when the court grants the former and then undertakes to reserve the latter, the reservation is repugnant to the grant and void. It seems to get at the same result by simply calling it by another name." Chapman v. Kirby, 49 Ill., supra, is to the same effect.

Applying these principles to the case at bar, we think it was proper to permit the plaintiff to prove the net income of his business before the defendant wrongfully dispossessed him, as a criterion of what he lost by said dispossession. Brown v. Werner, 40 Md. 268; Treat v. Hiles, 81 Wis. 280; Allison v. Chandler, 11 Mich., supra. Defendant objected to the evidence of the extent of plaintiff's sales of tickets extending back of the Christmas holidays, on the ground of an increased activity of business at that time; on that objection it was mostly confined to the time from the first of January to the eviction. Without reviewing the testimony on the subject, we state that, far from being vague, it was clear, positive and minute as to the gross amount of sales and the expenses, and afforded ample and accurate data for the jury to consider in estimating the injury to plaintiff's business. No error was committed in the admission of testimony as to the damages sustained, nor in the instruction as to their measure.

This was undoubtedly a case which warranted and even called for an award of punitive damages. The appellant's conduct was lawless, high-handed, oppressive and in utter disregard of respondent's rights. Wamsganz v. Wolff, 86 Mo. App. 205.

The judgment is affirmed. All concur.