| 86 | 125 |
| 104 | 540 |
| 86 | 125 |
| 49a | 285 |
| 86 | 125 |
| 113 | 107 |
| 86 | 125 |
| 63a | 369 |
| 86 | 125 |
| 139 | 26 |
| 86 | 125 |
| 79a | 358 |
| 86 | 125 |
| 90a | 610 |

THE FIRST NATIONAL BANK OF HANNIBAL V. THE NORTH MISSOURI COAL AND MINING COMPANY, *Plaintiff in Error.*

1. **Settlement,** IMPEACHMENT OF: NOTE. Where a settlement of accounts has taken place between parties and a note payable to a third person is given in satisfaction of the amount found to be due in an action on such note by the indorsee, the maker, without bringing all the parties interested into court, cannot impeach such settlement, nor show that the note was without consideration.

2. **Corporation, Note of:** ACTS OF AGENTS. The authority of a corporation or its officers to issue its promissory note need not be expressly given by its by-laws, or by formal resolution of the board of directors. Such authority can be inferred from the acquiescence of the corporation in, or the recognition by it of, the acts of its accredited officers in the regular course of its authorized business

*Error to Hannibal Court of Common Pleas.*—HON J. T. REDD, Judge.

AFFIRMED.

*James Carr* for plaintiff in error.

(1) The defendant corporation had no authority to issue the notes sued on. Such act on its part was *ultra vires*. Laws of Mo. 1863–4, 20; *McCullough v. Moss*, 5 Den. 569. (2) Only the directors of the defendant could make the notes, if they could be made at all.

·Godfrey stood in a fiduciary relation to each company .and this totally disqualified him from acting for either. He could not deal with himself. *Gamble v. Gibson*, 59 Mo. 585; *Flint & Pere Marquette Ry. Co. v. Dewey*, 14 Mich. 477; *People v. Township Board*, 11 *Id.* 222; *Aberdeen Ry. Co. v. Blaikie*, 1 McQueen, 461; *Wilbur ·v. Lind & Hough*, 49 Cal. 290; *San Diego v. S. D. & L. A. R. R. Co.*, 44 *Id.* 106. For the same reason he ·could not settle his account with the North Missouri Coal .and Mining Company for money loaned, advanced or laid out and expended for it. Price, as secretary, had no authority to settle with Godfrey. Godfrey could not perform the two-fold and inconsistent character of creditor and debtor. (3) There was no consideration for the notes; the defendant was not indebted to the Central Coal and Mining Company. (4) The facts sought to be proved by the witness, Hayward, were competent as evidence, and the court erred in excluding the same· (5) All the equities between the original parties are open ·and subject to be inquired into. *Goodman v. Simonds*, 19 Mo. 106; *Caddington v. Bay*, 21 John. 637; *Craighead ·v. Wells*, 8 Baxt. 38. (6) The bank took the notes with notice that they were given without consideration, and ·the court erred in refusing to permit defendant to show that the bank or its president had such notice. *Munroe ·v. Cooper*, 5 Pick. 412; Daniel on Neg. Ins., sec. 813. ·(7) When it is shown by the defendant that the note originated in *fraud*, then the burden of proof is shifted to the plaintiff to show that he came by the note in due ·course of business and paid value for it without notice· *Smith v. Sac. Co.*, 10 Wall.; *Munroe v. Cooper*, 5 Pick. 412.

*C. A. Winslow* for defendant in error.

(1) The court committed no error in giving or refus ·ing instructions. (2) Instruction number five did not.

contain the law. A by-law or resolution of the board was not necessary to show authority to make the notes. The acts and acquiescence of defendant's officers was competent to show the authority and its proper exercise. *Preston v. Missouri & P. L. Co.*, 51 Mo. 43; *Turner v. Chillicothe, etc., Ry. Co.*, 51 Mo. 501; *Washington M. F. I. Co. v. St. Mary's Sem.*, 52 Mo. 480; *Kiley v. Forsee*, 57 Mo. 390; *Southgate v. A. & P. R. Co.*, 61 Mo. 89; *Southern Hotel Co. v. Newman*, 30 Mo. 118; *Kitchen v. Ry. Co.*, 59 Mo. 514. (3.) The three defences are, want of power to make accommodation paper, want of consideration and payment; and it is alleged that plaintiff took with notice and without value. The first instruction asked by defendant and given by the court, and all the other instructions asked by it, except the fifth, expressly concede that the notes were properly issued, and that, by an agreement with Cartlidge, they could be taken by the Central Company in payment of Godfrey's debt, and be by Cartlidge indorsed to plaintiff as collateral for the debt of that company. The fifth instruction enunciates the proposition, that authority to make the notes could only be proven by the statute, the articles of association, the by-laws, or a resolution of the board. The point now made is an apparent afterthought, and has no standing in this court. The defendant must stand on the record as made below. The judgment cannot be reversed on a theory not tried below; much less, on a theory not set up in the answer, or contained in the instructions asked and refused, even if there are facts seeming to justify it, which is not this case. *Stix v. Matthews*, 75 Mo. 96; *Clements v. Yates*, 69 Mo. 623. On the case, as made by the pleadings and evidence, the court committed no error in excluding the testimony offered to be given by the witness, Hayward. It would be an anomalous proceeding to permit a readjustment and settlement of the affairs of defendant in this suit, without other parties and a more suitable foun-

dation in the pleadings. The settlements must be set aside, the accounts readjusted, and a new one taken, before defendant can reach the relief sought. This statement of the question ought to be conclusive. All the parties interested are necessary parties in equity, and the code preserves this rule. The charge is that the books and settlements are false. *Burke v. Flurnoy*, 4 Mo., *loc. cit.*, 117; *State ex rel. v. Sanderson*, 54 Mo. 203; *Alexander v. Homer*, 1 McCrary, *loc. cit.*, 42–3; Bliss Code Plead., secs. 72, 96, 97; Sto. Eq. Pl. (9 Ed.) secs. 136, 138.

RAY, J.—This was an action on four promissory notes, commenced in the Hannibal court of common pleas, April 18, 1874. Each of said notes was dated July 28, 1873, due sixty days after date with interest from date at ten per cent., payable to the Central Coal and Mining Company or order, executed by the North Missouri Coal and Mining Company, by C. O. Godfrey, president, and Edward Price, secretary, and endorsed before maturity to plaintiff by the Central Coal and Mining Company, one for $9,000, one for $2,963 and two for $10,000 each. There was no defence to the count on the first note, and the controversy arises over the last three. It appears that the North Missouri Coal and Mining Company and the Central Coal and Mining Company were Missouri corporations, organized under an act of the legislature, entitled "an act relating to incorporations for manufacturing and other purposes," approved February 15, 1864, for the purpose of digging and mining for coal in certain counties in the state and buying and selling the same, as the directors of said companies should deem best calculated to promote the interest of the stockholders thereof, etc. Sess. Acts of Mo. 1863, p. 18.

It also appears that the directors of said North Missouri Coal and Mining Company, by its articles of association, had power to make and prescribe such by-laws,

rules and regulations, respecting the management, control and disposition of the stock and property of said company as they might deem expedient and proper, not inconsistent with the constitution of the United States or of this state ; and that the by-laws of said corporation, so made, contain no express authority empowering its officers to make accommodation or any other kinds of paper. Section fifty-seven, of the by-laws of said North Missouri Coal and Mining Company, is as follows :

"Sec. 57. All transfers and conveyances of real estate shall be made by the company and under the seal thereof, in accordance with the orders of the board, and shall be signed by the president and secretary. All coal lands bought by individual members of the company on the line of the North Missouri railroad, or its branches, shall be bought for the benefit of the association, and shall be deeded to the association at the original cost and expense of purchase ; and no advance shall be claimed by the party purchasing, or paid by the association for time and trouble ; and all leases taken on the line of the said North Missouri railroad, or any of its branches, shall be for the benefit of this company."

Section ten of the act of the legislature, *supra*, provides that : "The corporations created and established by this act shall not, at any time, be engaged in banking, or suffered to do a banking business, or suffered to deal in bills of exchange, or notes, or make or utter the same, except when the same are given or received, *bona fide*, in the transaction of business connected with the object of their creation."

It further appears that Cyrus O. Godfrey was, at and before the date of said notes sued on, a stockholder and director in, and president of, both of said corporations ; that Price was secretary of defendant company, and Cartledge treasurer of the Central Coal & Mining

Company. It also appears that Hunt was both president of the First National Bank of Hannibal, and a stockholder in the North Missouri Coal & Mining Company, and that Godfrey was likewise a director in said national bank.

The answer of the defendant contains six several counts, in which the matters of defence are variously stated, but they need not be here set out in full. The defence is, in substance, that the notes were made for the accommodation of Godfrey, without any consideration, as between the two companies, and without power in the defendant company to make such paper, or authority in its officers to issue it; that Godfrey procured them to be issued by fraud and undue influence for his own accommodation; that the defendant company did not owe the Central Company anything, and the notes were without consideration; that Godfrey made it appear, by procuring false entries in the books of defendant, that defendant was indebted to him more than the amount of said notes for which he caused them to be executed, as stated, and indorsed to plaintiff for his own benefit, when, in fact, he was indebted to defendant in large sums on account of certain frauds and breaches of duty specified in the answer; that, for the several reasons stated, the notes were not the notes of defendant, and were obtained by fraud and without consideration; that they had been paid by another note; and that defendant took them without value and with notice of the matters charged. These matters are set up in the six several counts of the answer and are denied by the reply, which also sets up that plaintiff took the notes for value, in good faith, and without notice of the matters alleged against them.

At the trial before the jury there was evidence tending to show that the defendant owed Godfrey, at the date of these notes, more than the amount thereof; that Godfrey owed the Central Coal & Mining Company more than the amount of the notes; that the notes were exe-

cuted and delivered to Godfrey in payment of so much of the indebtedness to him, and his account credited therewith ; that they were accepted by the Central Company in payment of Godfrey's indebtedness to it ; and that this adjustment of the accounts was made by an agreement with Cartledge as treasurer of the Central Company. There was evidence further tending to show that the Central Company became indebted to plaintiff in the sum of over $30,000 on account of protested drafts drawn on Godfrey and negotiated by plaintiff ; that the notes in suit were indorsed to plaintiff, before maturity, as collateral security for said indebtedness and that said indebtedness still remains unpaid. There is other evidence tending to prove that subsequently, by an arrangement between the parties, certain other notes of Godfrey were substituted for the liability of the Central Company on the protested drafts ; that about the same time Godfrey made a note to plaintiff for $50,000, and secured it by a deed of trust on real estate, which was intended to protect his general indebtedness to plaintiff, including the notes last described ; that the notes in suit were still held as collateral for the indebtedness of the Central Company to plaintiff, then evidenced by the notes referred to in that connection, and that the deed of trust was foreclosed and the proceeds applied to the indebtedness secured, the *pro rata* of the Central Company being credited on the notes aforesaid, which, after deducting the proceeds of other collaterals credited thereon, still left more than the amounts of the notes sued on, due plaintiff by the Central Company. Such other portions of the testimony as we deem material will be noticed in the progress of this opinion. It is well, also, to state here that during the progress of the trial the defendant asked certain questions and offered to prove certain facts, which, on motion of plaintiff, were excluded by the court and excepted to by defendant, which also will be considered hereafter.

At the conclusion of the testimony, the court, of its own motion, gave the following comprehensive instruction:

"1. If the jury find, from the evidence, that at the date of the notes sued on, the defendant was indebted to Cyrus O. Godfrey in a sum equal to, or exceeding, the aggregate sum of said notes, and that, at said date, said Godfrey was indebted to the Central Coal & Mining Company in a sum in excess of the aggregate of said notes; and if the jury further find that it was understood that the said notes were executed and made payable to the said Central Coal & Mining Company with the understanding that said notes, if accepted by said Central Coal & Mining Company, should operate to satisfy defendant's debt to Godfrey, and so much of his, Godfrey's, debts to the Central Coal & Mining Company, and if the jury further find that said notes were delivered to and accepted by said Central Coal & Mining Company under said agreement, and that said Godfrey was thereupon credited with the amount by the said Central Coal & Mining Company, and defendant credited by said amounts in its account with said Godfrey; and if the jury shall further find after said notes were so delivered to the Central Coal & Mining Company, said company drew its drafts on said Godfrey, payable in New York, one for $30,000 and the other for $969.52, and procured said drafts to be negotiated by plaintiff and received the proceeds thereof; and if the jury shall further find that said drafts were presented to said Godfrey for payment, and protested for non-payment, and that, after due notice to said Central Coal & Mining Company of said protest, said company delivered the notes in suit to plaintiff as collateral security for the payment of the debt specified in said drafts, with the understanding that plaintiff would give to said company and said Godfrey a reasonable further time to pay said drafts, such state of facts vested the title to said notes in plaintiff and the verdict should be for

plaintiff. Unless the jury find, from the evidence, that the witness Cartledge was, at the date of the notes sued on, treasurer of the Central Coal & Mining Company, and that said Cartledge did, on the behalf of the said Central Coal & Mining Company, agree with said Godfrey to accept, and did, in fact, accept the notes sued on, in part discharge of the debt of said Godfrey to said company; and unless the jury further find that said notes were by Godfrey accepted in satisfaction of defendant's debt to Godfrey, the notes sued on are without consideration and the verdict should be for defendant, provided the plaintiff had notice of said facts at the time said notes were delivered to plaintiff." To which the defendant excepted.

The court also gave for the defendant the following instructions:

"1. If the jury believe from the evidence that C. O. Godfrey was president of the Central Coal & Mining Company, and was also president of the North Missouri Coal and Mining Company, and that, at the time of the execution of the notes in controversy by said Godfrey, as president, and Edward Price, as secretary of said North Missouri Coal and Mining Company, to the Central Coal & Mining Company, the said North Missouri Coal & Mining Company, was not indebted to the said Central Coal & Mining Company, the notes sued on are without consideration; unless the jury shall further find that at said time the North Missouri Coal & Mining Company was indebted to said Godfrey in the amount of said notes, and, by a mutual understanding and agreement between said companies, that said notes were to be so executed in payment of said indebtedness to said Godfrey, and accepted by said coal and mining company in payment of said Godfrey's indebtedness to it."

"6. If the jury find from the evidence that at the time the notes were indorsed to plaintiff, Josiah Hunt was president of the bank and Cyrus O. Godfrey was one

of the directors, the bank, in contemplation of law, had notice of any state of facts connected with the giving of said notes, of which said Hunt or said Godfrey then had notice or personal knowledge."

"9.   Unless the jury find from the evidence that the witness, Cartledge, was, at the date of the notes sued on, treasurer of the Central Coal & Mining Company, and that said Cartlidge did, on behalf of the said Central Coal & Mining Company, agreed with said Godfrey to accept, and did, in fact, accept the notes sued on in part discharge of the debt of said Godfrey to said company, and unless the jury further find that said notes were by Godfrey accepted in satisfaction of defendant's debt to Godfrey, the notes sued on are without consideration and the verdict should be for defendant; provided the plaintiff had notice of said facts at the time said notes were delivered to plaintiff."

Among the instructions asked by defendant and refused by the court is the following:

"5.   C. O. Godfrey, as president, and Ed. Price, as secretary, of defendant, had no authority, either from the statute under which the defendant was organized ; under the articles of association of defendant; under its by-laws, or under any resolution of its board of directors, to make and deliver the notes in controversy.   And authority to make and deliver said notes must be given in one of those modes."   To the refusal of which the defendant excepted.

Upon the issues thus made and submitted the jury found a verdict for the plaintiff and there was judgment accordingly, from which the defendant, after an unsuccessful motion for a new trial and in arrest, brings the case here by writ of error.   On this state of the record it is apparent that the only questions remaining for review grow out of the action of the trial court in excluding evidence and in giving and refusing instructions.   The evidence, thus excluded, is indicated by certain questions

propounded to witness, Hayward, touching the kind of terms Godfrey and Hunt were on, at the date of the transactions; and whether said witness had any conversations with Hunt, as president of said plaintiff bank, in regard to Godfrey's management of defendant company, at any time prior to the twentieth of August, 1873; or in regard to Hunt's being notified that Godfrey was using the moneys and credit of defendant company for his own use; or whether witness gave Hunt any such information, or whether witness knew anything in regard thereto; or whether Godfrey had so used or appropriated such funds and credit prior to the execution of the notes in question. These questions were not permitted to be answered, on the ground, as to some of them, that the information sought to be elicited was irrelevant, immaterial and incompetent; as to others, that they were also hearsay, and on the further ground that Godfrey was not a party to this suit.

The defendant offered to prove by said witness the following facts: "(1) That C. O. Godfrey, whilst acting as director and president of the defendant, and without any authority from defendant, or from its board of directors, between the first day of January, 1871, and the twenty-eighth of July, 1873, wrongfully took money, funds and assets belonging to defendant to a large amount to-wit: The sum of $34,395.44 and upwards, and used, appropriated and converted the same to his own use and benefit. (2) That said Godfrey was, at the time of the pretended making and delivery of said notes, and still is, insolvent. (3) That said Godfrey, whilst acting in his capacity as president of the defendant, and without any authority from the defendant, or from its board of directors, between the first of January, 1871, and the time of the making and delivery of said notes, wrongfully took money, funds and assets of defendant and misapplied and misappropriated said money, funds and assets as follows: By investing the sum of $25,995.44

in the capital stock of the Camden Coal Company, a corporation organized under the laws of the state of Missouri for the purpose of mining coal at Camden, in Ray county, Missouri, and taking the title to said stock in his own name; and, also, by investing the sum of $3,400 in the purchase of the southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of section twenty, in township fifty-six, and range fourteen, west, situated in Macon county, Missouri, and opening and developing and equipping what is called and known as the 'Emerson Mine,' or mine number seven, on said real estate and the improvements placed thereon, with the defendant's money, in his own name." But this offer was not allowed by the court, on the ground that the same was irrelevant and incompetent.

From an examination of the interrogatories propounded to witness, Hayward, and the subsequent offer to prove certain facts by him, it is quite apparent that they cover substantially the same thing; in other words the facts offered to be proved constitute, for the most part, the evidence sought to be elicited by the question previously asked the same witness, and for that reason they may be examined and considered together. The answer to one is a reply to the other. It is contended for defendant that the facts proposed to be proved tended, at least, to prove one of the main and material issues on trial; that is, that the notes sued upon were without consideration; or, in other words, that the defendant company, in point of fact, as would have appeared upon a fair settlement and adjustment of accounts, was not indebted to Godfrey in any amount whatever, and that plaintiff had notice thereof when it took said notes. If we concede, for the sake of the argument, the correctness of these propositions, does it follow, under the undisputed facts in evidence and the state of the pleadings in the cause, that such evidence would have been competent or admissible on the trial of the issues thus made and

presented? What are the conceded facts? It appears that the books and settlements of the defendant company, kept and made in the regular course of its business, by its entries, accounts and balances, show that at the date of these notes there was a balance due said Godfrey from said defendant in excess of said notes and that said notes were given and accepted in settlement and payment of said balance to the extent thereof. This is apparent, both from the answer of defendant and the uncontradicted testimony of the witness, Price, who was its accredited cashier and book-keeper, and, as such, familiar with said books and their contents. The purpose of these interrogatories, or facts offered to be proved, was, in effect, to set aside these settlements and re-open and readjust said accounts and balances. Can this be done in the absence of the parties interested therein and affected thereby? Neither Godfrey nor the Central Coal & Mining Company are parties to this suit. It may be conceded that, upon a proper showing in the answer in the nature of a cross-bill, this might, under proper circumstances, be done, but in such a proceeding it is manifest that all the parties interested therein and affected thereby would be necessary parties to such an inquiry.

The settlements and adjustments of the accounts, as shown by the books, existed as facts, and were made with apparent authority in the regular course of its business. They were the basis of the notes in controversy, in the validity of which both Godfrey and the Central Coal & Mining Company are interested. Any attack upon them for fraud, mistake or abuse of authority would involve all of the parties to be affected by such attack and render them necessary parties to the suit. In the absence, therefore, of these parties we are not prepared to say that the court erred in excluding such evidence. *Burk v. Flournoy et al.*, 4 Mo. 117; *State ex rel. v. Sanderson*, 54 Mo. 203, 206; *Alexander v. Horner*, 1 McCrary, 634;

Bliss on Code Plead., secs. 72, 96, 97 ; Story's Eq. Plead. (9 Ed.) secs. 136, 138.

It is insisted for defendant that the court erred in refusing the fifth instruction asked on its behalf. This instruction calls in question both the power of the corporation itself and the authority of the officers named to make or issue the notes in question. It asserts without qualification that the officers named "had no authority, either from the statutes under which the defendant was organized, under the articles of association of defendant, under its by-laws, or under any resolution of its board of directors, to make and deliver the notes in controversy, and that the authority to make and deliver said notes must be given in one of these modes." Under prior adjudications of this court on kindred questions and the admitted evidence in this cause, we are not prepared to say that it was error to refuse this instruction. According to the authorities, the power and authority of such corporations, or its authorized officers, to make such papers, need not in all cases be expressly given in its by-laws, or by formal resolution of its board of directors. It may be sufficient, in many cases, if it can be fairly inferred or presumed from its acquiescence in, and recognition of, the acts of its accredited officers, in the regular course of its authorized business, for a series of years, as in the case at bar. In this case it appears, as before stated, that the North Missouri Coal & Mining Company (as well as the Central Coal & Mining Company), was a Missouri corporation, organized under the act of February 15, 1864, for the purpose of digging and mining coal in certain counties in the state, and buying and selling the same as its directors should deem best calculated to promote the interest of its stockholders.

The tenth section of said act provides that: "The corporations, created and established by this act, shall not at any time be engaged in banking, or suffered to do a banking business, or suffered to deal in bills of exchange,

or notes, or make or utter the same, except when the same are given or received *bona fide* in the transaction of business connected with the object of their creation."

It is apparent from this section of the act that the object of the legislature was to prohibit such corporations from engaging in banking, or doing a banking business, or dealing in, uttering or making bills of exchange, or notes, as such banks, and it is equally plain, we think, that it was not the purpose thereby to prevent such corporations from making or issuing promissory notes when given or received *bona fide* in the transaction of business, connected. as these were, with the object of its creation. Indeed, such is the express language of the act itself. The testimony of Price, the accredited secretary of the defendant, if he is to be believed, and he stands unimpeached by the record, shows in direct and express terms that the notes in controversy were thus given and received; that they were given and received in payment of so much due from the defendant to Godfrey, on account of advances made by said Godfrey, in payment of the debts and expenses of said company in its said mining operations, and in the usual course of its expressly authorized business. There is no evidence in the record showing that said notes were made, as charged in the answer, for the accommodation of Godfrey, or without consideration. But all the evidence tends to show that they were given in the transaction of business strictly connected with the object of the creation of the corporation.

There was evidence tending to show that such paper was habitually used by such officers, in the ordinary transactions of the defendant, for a series of years, without any express authority in its by-laws, or any formal resolution of its board. Under the statutes in question, the organization of the corporation thereunder, the evidence in the cause, and the adjudications in question, the defendant company has, we think, no just cause to complain

of the refusal of said instruction.    5 Mo. *supra;* 51 Mo. 43,   45 ;  51  Mo.  501 ;  52  Mo.  480 ; 57 Mo.  390 ; 61 Mo. 89 ; 30 Mo. 118 ; 59 Mo. 514 ; 45 Mo. 419 ; 74 Mo. 104 ; 7 Cranch. 299 ; *Donnell et al. v. Lewis Co. Sav. Bk.*, 80 Mo. 165 ; *Ringling v. Kohn*, 6 Mo App. 333.

It is, also, objected that the court erred in the instruction given, on its own motion, in others given on behalf of plaintiff, and in the refusal of other instructions asked by the defendant.    The instructions given cover, we think, all the material and issuable facts in the case, and, as we think, properly and fairly submitted them to the jury and, as often declared, it is not our custom to disturb the verdicts so found.    The other instructions refused were deemed either not material or substantially embraced in those actually given in the cause.    Other questions and authorities are suggested and cited in the briefs of counsel, but we deem them not necessary to the proper disposition of the cause, and they need not be further noticed.

Finding no error in the record the judgment of the trial court is affirmed.    All concur.