Ferguson & Wheeler v. Venice Trans. Co.

FERGUSON & WHEELER, Appellants, v. VENICE TRANS-
PORTATION COMPANY, Garnishee; ST. LOUIS TRUST
COMPANY, Interpleader, Respondent.

### St. Louis Court of Appeals, March 21, 1899.

1. **Corporation Officer's Power to Assign an Asset of the
   Corporation, Virtute Officii.** In the case at bar the question is,
   can the president of a corporation *in virtute officii* assign an asset of
   the corporation in payment or part payment of a corporate debt?
   Held, that the president had no authority to make the assignment in
   question.

2. ——: ACQUIESCENCE: ESTOPPEL. In the case at bar the evidence
   showed the corporation acquiesced in the unauthorized act of its
   president and took the benefit of it; held, that the corporation would
   be estopped to deny its validity.

3. **Practice, Trial:** TRIAL JUDGE MAY DIRECT THE JURY TO FIND A
   PARTICULAR VERDICT. A trial judge in the exercise of a wise and
   sound discretion, may in a proper case, direct a jury to find a par-
   ticular verdict.

*Appeal from the St. Louis City Circuit Court.*—HON.
JOHN A. TALTY, Judge.

AFFIRMED.

GEO. L. EDWARDS for appellants.

"The officers of a corporation can not, against the wishes
of its stockholders, or any one of them, sell and transfer the
entire property from which it derives its emoluments or
which forms the basis of its business operations." Field v.
Roanoke Inv. Co., 123 Mo. 603. The pretended assignment
of the debt in question was without authority and void. 2
Cook on Stock and Stockholders and Corporation Law, sec.
716; R. S. Mo. 1889, sec. 2772; Hyde v. Larkin, 35 Mo. App.

365; Chew v. Ellingwood, 86 Mo. 260; Webb & Co. v. Lumber Co., 68 Mo. App. 546; Descombes v. Wood, 91 Mo. 196; Hutchinson v. Green, 91 Mo. 367; Calumet Paper Co. v. Haskell Show Printing Co., 45 S. W. Rep. 1115, decided by Div. No. 2, Missouri Supreme Court, June 22, 1898. The court erred in giving a peremptory instruction to the jury to find a verdict for the St. Louis Trust Company. Bryan v. Wear, 4 Mo. 74; Vaulx v. Campbell, 8 Mo. 224; Gregory v. Chambers, 78 Mo. 294; Schroeder v. Railroad, 108 Mo. 322.

STEWART, CUNNINGHAM & ELIOT for respondent.

Of these matters involved in the case, number 1, to wit, the existence of a debt, was admitted by the pleadings and did not have to be submitted to the jury. Number 2 was an instrument in writing, the legal effect of which was for the court to determine, excepting as to the execution of the paper by an authorized officer of the Madison Car Company. The authority of the officer (L. M. Rumsey, president) did not have to be submitted to the jury, as it can be assumed as a matter of law (see opinion of the court in this cause). Musser v. Johnson, 42 Mo. 74; Fire Clay Works v. Ellison, 30 Mo. App. 67; Bambrick v. Campbell, 37 Mo. App. 460; State v. Heckert, 62 Mo. App. 428; Winscott v. Inv. Co., 63 Mo. App. 367. It would be very unfortunate for the business community if the courts insisted upon proof of authority in cases where ordinary corporate business has been conducted by the president of the company In the end commercial usage makes the law in these matters.

BLAND, P. J.—The Madison Car Company, the Venice Transportation Company, the garnishee, and the St. Louis Trust Company, intervener, are all private business corporations. Plaintiffs, in an attachment suit brought against the Madison Car Company, garnished the Venice Transportation

Company, which in its answer to interrogatories filed, stated that on August 28, 1896, it was indebted to the Madison Car Company in the sum of $1,043.96; that on that day said car company assigned said indebtedness to the St. Louis Trust Company, of which assignment it was notified on the succeeding day; that on September 2, 1896, it paid the trust company $204.90 of said indebtedness, and that the trust company claimed the balance of $839.80. The plaintiffs inferentially denied the fact of the assignment and alleged that if it was made, that it was intended by the parties to cheat and defraud the creditors of the car company. Under the provisions of section 5242, Revised Statutes 1889, the court made an order on the trust company to appear and sustain its alleged claim to the debt. The trust company appeared under this order and claimed the debt under an assignment from the Madison Car Company and denied that it was made with the intent to cheat and defraud the creditors of the Madison Car Company. The issues were submitted to a jury. On the trial it was proven by both parties that L. M. Rumsey was the president of the Madison Car Company, and the trial was conducted on the theory that he was its president. The trust company offered in evidence and proved the correctness of the following account, to wit:

"Room 821 Security Building, St. Louis, Mo.
"St. Louis, Mo., Aug. 28, 1896.
"Venice Trans. Co., City,
"In account with Madison Car Company.

| | |
|---|---:|
| June 25, car body | $405.00 |
| Less for brake | 40.00 |
| | $365.00 |
| July 9, Car body | 460.00 |
| July 11, Mdse | 17.80 |
| July 18, Mdse | 159.83 |
| Aug. 14, Mdse | 41.33 |
| | $1,043.96 |

At the bottom of this account was the following assignment in writing:

"August 28th, 1890.

"For value received the above account is hereby assigned to the St. Louis Trust Co., Madison Car Co.

"By L. M. Rumsey, President."

The secretary of the Madison Car Company testified that this assignment was made and assigned by L. M. Rumsey. The plaintiffs sought to show that the assignment was made for the purpose of cheating and defrauding the creditors of the Madison Car Company, but failed to produce any testimony tending to sustain the allegation of fraud. The facts as to the assignment briefly stated are, that the Madison Car Company was on August 28, 1896, indebted to the St. Louis Trust Company in something over $146,000, and that, to in part secure this indebtedness, Rumsey as president assigned the Venice Transportation Company's account to the trust company. On the following day, August 29, the Madison Car Company by its president, L. M. Rumsey, executed two chattel mortgages for all of its personal assets, one to the St. Louis Trust Company conveying the greater part of its assets to secure its indebtedness to that company; the other to a trustee conveying the remaining portion of such assets to secure its indebtedness. The evidence that is brought before this court is in abstract form and does not show that these mortgages were made by authority of a resolution of the board of directors of the car company, but does show that transactions of making the assignment and the mortgages were well known and understood by the officers and directors of the car company, and in the absence of testimony to the contrary it is fair to presume that the chattel mortgages were made by direction of the board of directors, as corporations, as well as individuals, are presumed to transact their business in the ordinary way and according to legal methods. The property conveyed by the

mortgage was sold by the trust company and its proceeds and the amount of the Venice Transportation Company's account was credited on the indebtedness of the Madison Car Company, but still left a balance of $20,000 or more due the trust company. All that can be said of these transactions is that the car company preferred to a certain extent the St. Louis Trust Company over its other creditors; such a preference is not fraudulent or evidence of fraud, for it is well settled law that payment of an honest debt in whole, or in part, to a preferred creditor is not a fraud on the other creditors of the debtor, even though the preference exhausts the assets of the debtor and its effect is to hinder or delay the other creditors in the collection of their claims. At the close of all the evidence the court instructed the jury to find the issues for the St. Louis Trust Company, which was done and a judgment rendered thereon, from which plaintiffs appealed.

I. The appellants contend that they denied that Rumsey was the president of the Madison Car Company, and that this issue should have been left to the jury. The intervener and the plaintiffs both proved by their respective witnesses that Rumsey was the president of the company and the case was tried on the theory that he was the president of the company, appellants are therefore in no condition to deny on appeal a fact that they proved and practically admitted on the trial. Harper v. Morse, 114 Mo. 317; Minton v. Steele, 125 Mo. 181; Jennings v. Dunham, 60 Mo. App. 635; McKinney v. Gunham, 38 Mo. App. 344.

II. Appellants also contend that Rumsey as president had no authority to make the assignment of the account, and that the pretended assignment was therefore void. No resolution of the board of directors or by-law of the corporation was offered in evidence showing a conference of any power on the president to deal with the assets of the corporation, nor was there any evidence that Rumsey had theretofore dealt in a similar manner with the assets of the company or

with the approval or acquiescence of the board of directors. The validity of the chattel mortgages executed by Rumsey for the corporation are not involved in this case, and in the absence of positive statement that they were made, either with or without direction of the board of directors, their execution throws no light upon the assignment of the account, we are therefore left to find the authority of Rumsey to make the assignment, if any, in the powers which inhere in him as the chief officer of the corporation. In Musser v. Johnson, 42 Mo. 74, it was held that an assignment of a claim of a corporation by the president and attested by the secretary with the corporate seal, was *prima facie* valid. In Missouri Fire Clay Works v. Ellison, 30 Mo. App. 72, this court held that authority on the part of the president and secretary to execute a deed for the corporation need not be affirmatively shown by a party claiming under the deed, but in the absence of testimony to the contrary the authority would be presumed, the deed being under seal. In Bambrick v. Campbell, 37 Mo. App. 460, it is said that the president being the legal head of the body corporate, when an act is performed by him, the presumption will be indulged that the act is legal and binding on the corporation. In this case a tax bill was assigned by the president of the corporation. In State v. Heckert, 49 Mo. App. 230, a holding out by the board of directors of the president as its agent to make assignments of its assets in payment of debts would be binding on the corporation, without obtaining special authority from the board. To the same effect is 1 Morawetz on Corporations, section 509. In Winscott v. Inv. Co., 63 Mo. App. 367, it was held that a contract signed by the president and secretary of a private corporation will be presumed to be within the powers of these officers. In State to use of Thrasher v. Heckart, 62 Mo. App. 428, it was held that an assignment of a claim made by the president and attested by the secretary with the corporate seal attached was *prima*

*facie* valid.   In Bank v. North Missouri Coal Co., 86 Mo. 125, it was held that the authority of an officer of a corporation to issue the promissory note of the corporation might be inferred from the acquiescence of the directors or the recognition by it of the acts of its agents.   In Sparks v. The Dispatch Transfer Co., 104 Mo. 531, it was held that the president of a private corporation as its chief executive officer may, without any special authority from the board of directors, perform all acts of an ordinary nature which by usage or necessity are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of business.   In this case the corporation was held liable on promissory notes executed in its name by the president for the purchase price of mules bought for the corporation.   In Railroad v. Snead, 19 Grattan, 354, it was held that the authority of the president of a railroad company to make contracts for necessary labor for the company is incident to his office.   In Goodrich v. Reynolds, 31 Ill. 490 (s. c., 83 Am. Dec. 240), it was held that the assignment of the note of a railroad company by its president is *prima facie* the act of the company.   In Railroad v. Coleman, 18 Ill. 297, it is said that the president of the corporation may, without express authority, perform such acts and duties in regard to the ordinary affairs of the corporation as custom has imposed or necessity requires of him as such president.   To the same effect is Mitchell v. Deeds, 49 Ill. 416; Boone on Corporations, sec. 144; Creeder v. Loud & Sons Lumber Co., 86 Mich. 541. That the president of a corporation may, without the express authority do any act necessary to carry on the ordinary business of the corporation, finds support in numerous decided cases, among which we cite, in addition to those already cited, Sherman & Co. v. Swigart, 43 Kan. 292; Washburn v. Railroad, 2 Head, 638; Ins. Co. v. Bowman, 84 Ky. 430; Siebe v. Joshua Hendy W. M., 86 Cal. 390.   There are numerous cases holding that a president of a corporation has no

implied authority to act as its agent. Wait v. Nashua Armory Co., 14 L. R. A., and note. That no officer or agent of a corporation can make a general assignment of its assets, is the well settled law. Calumet Paper Co. v. Haskell Show Co., 144 Mo. 331, and cases cited. The question in the case at bar is, can the president of a corporation *in virtute officii* assign an asset of the corporation in payment or part payment of a corporate debt? In Hyde v. Larkin, 35 Mo. App. 365, the Kansas City court of appeals held that the president who was also general manager of the corporation, had no power to borrow money for the corporation and to assign an asset of the corporation as security for the money borrowed. The only case in this state to which we have been referred, or which we have been able to find, that directly recognizes the power of a president of a corporation *virtute officii* to assign an asset of the corporation, is the case of Bambrick v. Campbell, *supra,* and the authority to do so in that case is based upon what the court called the general custom of presidents of corporations to exercise certain powers in acting for corporations. Whether any custom was proven in that case to warrant the assumption that it existed, is not disclosed by the opinion. Such a power is not necessarily incident to the office of president; its exercise can not be claimed from any necessity that could possibly arise; that its exercise is customary among business corporations, we are not prepared to assume. It seems to us that the assets of a corporation are its very life blood, the things upon which it subsists, and is enabled to transact business, and to accomplish the purposes of its erection, and for these reasons are, and of right should be, under the exclusive control of the board of directors, who are the representatives and trustees of the body corporate; and it also seems to us that to concede that the president of a corporation, without express authority from the board of directors, may assign an asset of a corporation, is to concede that he may make way with all of its assets, for if he can

assign one he may assign another, and another, and so on until the assets are all disbursed and the corporation left without the wherewith to do business, and that he 'may do by piece-meal that which the law says he nor any other officer or agent of a corporation may do at one time, to wit, assign away all its assets, and we think the doctrine announced by the Kansas City Court of Appeals in Hyde v. Larkin, *supra*, is the sounder and better doctrine, and rule that Rumsey had no authority as president to make the assignment of the account to the St. Louis Trust Company; but the evidence shows that before the attachment suit was commenced, the officers and directors of the Madison Car Company acquired knowledge of the assignment, and that the secretary notified the debtor (The Venice Transportation Company) of the assignment, and the corporation was given and took credit for the amount of the assigned debt, thus showing that the corporation acquiesced in the unauthorized act of Rumsey and took the benefit of it, and hence would be estopped to deny its validity. Pearsons v. Guarantee Inv. Co., 64 Mo. App. 32; Jones v. Williams, 139 Mo. 1. Plaintiffs, as attaching creditors of the Madison Car Company, did not acquire any greater or higher right to the debt, by its garnishment, than the Madison Car Company had at the date of the service of the writ, which was nil. Scales v. Southern Hotel Co., 37 Mo. 520; Weil v. Tyler, 43 Mo. 581; Ritter v. Ins. Co., 28 Mo. App. 140; Zellman v. Bank, 67 Mo. App. 672.

II.   Another contention of appellants is, that as they denied the fact that an assignment of the account had been made, it was the duty of the trial court to submit that issue to the jury, notwithstanding the fact that the assignment was in writing and no evidence whatever was offered by appellants to contradict or impeach that writing. The case of Gannon v. Laclede Gas Light Co., 46 S. W. Rep. 968, is cited as supporting this contention. The Gannon case goes to the extreme in limiting the discretion of a *nisi prius* judge to

direct a jury to find a particular verdict, further perhaps than any other case to be found in any of the court reports, but it is not so extreme as to support the contention of the appellants. The evidence in the Gannon case was oral, came from the mouths of witnesses who might be mistaken, who might be prejudiced, biased or interested, or who might possibly suppress the truth or even willfully lie. The assignment of the account, which appellants say they contested, was not dependent for its establishment on oral testimony; it was in writing, plain, unambiguous, legible writing that could not lie, and about which neither the court nor jury could be mistaken; to say that it was not made, would be to deny the evidence of sight, the existence of matter, just as reasonable to ask the jury to find whether the sun was shining at a given moment, when at that very moment its rays were flooding the court room and piercing the eyes of the judge and jury, as to ask them to find whether or not the account was assigned, when that assignment was present and as much in view and in evidence as the persons of the jury and judge. The constitution guaranteeing the right of trial by jury does not intend that the courts shall do absurd and ridiculous things to carry out its provisions. It does not require that all the five senses shall be ignored by the judge to effectuate its provisions; nor does it require the judge presiding over the jury trial to close his eyes to the facts, to cast aside all judicial discretion, to convert himself into a mere unthinking, senseless dummy and throw the scales of justice to the jury to be used and tampered with at their unrestrained will. The Gannon case is somewhat weakened by the opinion of the supreme court delivered in banc, December 23, 1898, in the case of Kreis v. Railway, and we think we are safe in the assertion that the long established practice that a trial judge in the exercise of a wise and sound discretion may in a proper case direct a jury to find a particular verdict, has not been abrogated by the last controlling opinion of the supreme

court. In the case at bar the learned circuit judge correctly directed the jury to find a verdict for the intervener, and we affirm the judgment. All concur; Judge Biggs in the result only.