STATE OF MISSOURI ex rel. JOHN H. SCHROEDER et al., Appellants, v. GEORGE F. PERKINS et al., Respondents.

**St. Louis Court of Appeals, December 3, 1901.**

1. **Corporation: POWERS OF DIRECTORS.** The directors of a corporation can not act by proxy.

2. ———: ———. And in the case at bar, Canmann's wife could not lawfully represent Voelkers, a director, by virtue of the alleged letter or power of attorney which she held.

3. ———: MEETING OF DIRECTORS, WHEN NECESSARY: NO-TICE, EFFECT OF. Besides, there was no regularly called meeting of the board of directors of the corporation, as it was shown the third director, O. G. Canmann, was neither notified, nor an effort made to notify him of the meeting.

4. ———: ———: ———. The president of a corporation does not possess power to execute a deed of trust on corporate property as an incident of his office.

5. ———: ———: ———: CREDITORS: DEED OF TRUST, WHEN VOID. And in the case at bar, as the act of the president of the corporation was unwarranted, there being neither express nor implied authority for it, it remained voidable at the instance of the corporation's creditors, on account of the infirmity in its execution.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

In 1898, George F. Perkins and Ralph W. Perkins, a partnership, commenced an action by attachment against the

Canmann-Voelkers Fish Company, a corporation, in the circuit court of the city of St. Louis. An attachment writ was issued and certain personal property was levied on by the sheriff.

Afterwards, an indemnity bond was given to the sheriff by the attaching plaintiffs, with the National Surety Company as their surety.

The present action was brought on that bond by the State of Missouri at the relation of John H. Schroeder, Henry Schroeder, L. P. Canmann and M. F. Heisel. When the goods were seized, these relators made claim in writing, alleging they were the absolute owners, and the bond sued on was thereupon executed.

In this action, plaintiff alleges the relators were the owners at the time of the levy, of the property seized; that they were engaged in the wholesale fish business and said property constituted a part of their stock; that the same was removed from their store and sold under the writ of attachment at a great sacrifice, to plaintiff's damage in the sum of twelve hundred dollars, for which they ask judgment on said bond,

The answer was a general denial.

It is necessary to state somewhat fully the circumstances out of which this litigation arose. Prior to August, 1897, there was a corporation doing business in the city of St. Louis, known as the Canmann-Voelkers Fish Company. On the twelfth day of that month, a deed of trust, purporting to be the deed of said corporation, was executed to Martin V. Kelly as trustee, for the benefit of Charles Gallagher, Charles Voelkers, O. G. Canmann, M. F. Heisel and A. C. Cederstrom, to secure certain promissory notes, alleged to be owing to said beneficiaries and described in the deed of trust. On that date, L. P. Canmann and Charles Voelkers, it is testified, were the stockholders of the corporation, and they were likewise its directors. The deed of trust was executed by L. P. Can-

mann, the president of the company, in the name of the corporation and with the corporate seal attached, and carried an acknowledgment in due form by said Canmann, reciting that the instrument was signed and sealed in behalf of said corporation and by authority of its board of directors.

It appears from the testimony of L. P. Canmann, that he was the only director present when the deed of trust was authorized and executed. Charles Voelkers was at the time in Iowa, but L. P. Canmann swears that his wife held a proxy from said Voelkers empowering her to act in his place. It was a letter, he says, or power of attorney, which she had held, authorizing her to vote for Voelkers, ever since the business had been running, because he was out of the city and could not attend meetings.

L. P. Canmann likewise testifies he telegraphed Voelkers, or wrote him, on the eleventh day of August, that he contemplated executing a deed of trust and an assignment. O. G. Canmann was not present when these instruments are claimed to have been authorized, nor was he notified of the intention to execute them. In addition to making the deed of trust, L. P. Canmann likewise made a general assignment, on the same day, of all property of the Canmann-Voelkers Fish Company, to Christian Schneider, subject to the deed of trust.

Just when Kelly, the trustee in the deed of trust, took possession of the property, does not appear, but it must have been soon after the date of the deed, for he sold it out as trustee during the same month.

The relator, John H. Schroeder, and one Schilling, bought about three-quarters of the entire stock at said trustee's sale, the evidence tends to prove. Schroeder bought in the property for Charles Voelkers, and Schilling for the benefit of O. G. Canmann. They paid no money for what they bought, and left the goods in the store: this is admitted.

Thereupon the Canmann Fish Company was organized,

with a capital stock of ten thousand dollars, and did business until January, 1888. The stockholders of this company were L. P. Canmann, Charles Voelkers and M. F. Heisel, and there was evidence to prove the goods bought at the trustee's sale by Schroeder and Schilling, acting as is claimed, for Voelkers and O. G. Canmann, were transferred to the said Canmann Fish Company in part payment of its capital stock. On January 21, 1898, the Canmann Fish Company, which had been doing business at the same stand formerly occupied by the Canmann-Voelkers Fish Company, sold out to these relators, to-wit; John H. Schroeder, L. P. Canmann and M. F. Heisel, who formed a partnership under the style of the Missouri Fish Company; Heisel having practically the same interest he had in the deed of trust, in which he was secured to the amount of three hundred dollars. On the twenty-sixth day of January, 1898, the goods in controversy in this action, were seized by the sheriff while in the possession of the said Missouri Fish Company.

Prior to the organization of the Missouri Fish Company, John H. Schroeder, as relators claim, had bought Voelkers' interest in the Canmann Fish Company—"not his stock, but his interest," giving two thousand two hundred and fifty dollars therefor in notes falling due monthly, which he paid.

Schroeder testified he left the goods, or interest so bought, where they were in the store of the Canmann Fish Company. He afterwards gave his son, Henry, a thousand dollars' interest in the business.

When the Missouri Fish Company bought out the Canmann Fish Company, it paid the debts of the latter company, but otherwise paid no money for the purchase; the articles of co-partnership showing that John H. Schroeder, Henry Schroeder, L. P. Canmann and M. F. Heisel were given interests in the firm of the Missouri Fish Company in propor-

tion to their interest in the capital stock of the Canmann Fish Company.

The court gave this instruction on its own motion:

"If the jury find and believe from the evidence that all or any part of the goods in this case, namely, the 117 half-barrels of lake herring and the 70 cases of cove oysters in one-pound cans, never belonged to the Canmann-Voelkers Fish Company, and did not, therefore, come into the possession of the plaintiffs through the Canmann-Voelkers Fish Company, then the jury must find in favor of the plaintiffs as to any of said goods, which they may believe from the evidence never belonged to the said Canmann-Voelkers Fish Company."

Any other facts requiring notice will be stated in the opinion.

*Daniel Dillon* and *Geo. E. Egger* for appellants.

The court erred in overruling the objections of plaintiff to the admission in evidence of the petition, affidavit and judgment in the case of Perkins & Son v. Canmann-Voelkers Fish Company. Those proceedings were in a suit to which none of the plaintiffs was a party. Those proceedings were entirely *res inter alios acta* and were inadmissible against plaintiffs, and their objections to them should have been sustained. 1 Freeman on Judgments (4 Ed.), sec. 154; Broom's Legal Maxims (7 Ed.), mar., pp. 954-5; Wise v. Wimer, 23 Mo. 237; Albert v. Besel, 88 Mo. 150; Strauss v. Ayres, 87 Mo. 348; Ford, Ad., v. O'Donnell, 40 Mo. App. 60.

*Joseph Wheless* for respondents.

(1) The president or secretary of a corporation can not make an assignment by conveying its assets for the benefit of

creditors, unless duly authorized by the board of directors. When an assignment is made, it must be the act of the board. No unauthorized act of individuals can be claimed as a conveyance of the corporation property. Webb v. Lumber Co., 68 Mo. App. 546; Hyde v. Larkin, 35 Mo. App. 365; McKeag v. Collins, 87 Mo. 164. (2) If the parties plaintiff or the parties defendant have a joint interest in the subject-matter of the suit, an admission by one is evidence against all. Armstrong v. Farrar, 8 Mo. 827; Hurst v. Robinson, 13 Mo. 82. (3) An admission against the interest of a co-partnership in relation to a firm transaction, is competent against both members of the firm." Anslyn v. Franke, 11 Mo. App. 598; Cady v. Kyle, 47 Mo. 346. (4) The admissions and declarations of one of the partners touching a partnership transaction bind all the remaining members of the firm. Henslee v. Cunnefax, 49 Mo. 245.

GOODE, J.—In the view we take of this case, there is only one point which need be considered; the validity of the deed of trust executed in the name of the Canmann-Voelkers Fish Company to Kelly. The court instructed the jury to find the issues for the plaintiff as to any of the goods which they might believe from the evidence never belonged to said company, nor came into the possession of the relators through it; and inasmuch as the jury returned a verdict for defendants, it must be taken for granted they found all the goods in question originally belonged to that company.

Any infirmity in the title of relators to the property, if it belonged in the first place to the Canmann-Voelkers Fish Company, necessarily arose out of the invalidity of the deed of trust; either on account of the mode or the purpose of its execution, and the knowledge of one or more of the relators of the invalidating fact. A close study of the evidence has led us to the conclusion that the deed of trust was voidable,

because unauthorized by the board of directors of the Can-mann-Voelkers Fish Company; of which circumstance at least one of the relators had actual knowledge and that, therefore, there can be no recovery in this action.   The deed was made by L. P. Canmann, president of said company, without express authority from the directory.   Directors can not act by proxy, and so Canmann's wife could not lawfully represent Voelkers by virtue of the alleged letter or power of attorney, which she held.   Perry v. Tuskaloosa, etc., Co., 93 Ala. 364; Craig Medicine Co. v. Bank, 59 Hun. 561; In re Portugese Consolidated Copper Mines, L. R. 42 Chan. Div. 160; McLaren v. Fisken, 28 Grant (Can.) 352; Att'y-General v. Scott, 1 Vesey (Sr.) 412.   Besides, there was no regularly called meeting, as it was shown the third director, O. G. Canmann, was neither notified, nor an effort made to notify him. The president of a corporation does not possess power to execute such an instrument as an incident of his office—*virtute officii.*   Hyde v. Larkin, 35 Mo. App. 365; Ferguson & Wheeler v. Trans. Co., 79 Mo. App. 352; Degnan v. Thoroughman, decided by this court but not yet reported; State ex rel. v. Rubber Mfg. Co., 149 Mo. 181.

We will inquire whether it was valid on any other legal principle.   This case and others like it, where the want of authority from the directors is affirmatively proven, are to be distinguished from those in which it is presumed, prima facie, the chief officer of a company was authorized to execute any deed or contract purporting to be a corporate act performed by him until the contrary is shown.   Winscott v. Investment. Co., 63 Mo. App. 357; Missouri Fire Clay Works v. Ellison, 30 Mo. App. 67; Bambrick v. Campbell, 37 Mo. App. 460; Musser v. Johnson, 42 Mo. 74; Hall v. Bank, 145 Mo. 418.

Sometimes a contract of a corporation, not expressly sanctioned by its board of directors, is good because of a custom

or usage of the company permitting, and thereby impliedly authorizing, such acts to be done by the president. State v. Heckart, 49 Mo. App. 280; First Nat'l Bank v. N. Mo. Coal Co., 86 Mo. 125. But no such custom of the Canmann-Voelkers Fish Company was shown in support of the deed. So far as appears, that was the first act of the kind its president ever attempted. The security stands, then, unsupported by an implied authority.

The remaining method of validating an irregular corporate act or contract, namely, by subsequent ratification by the directors or stockholders, is invoked by the appellant, the position being taken that the deed of trust was ratified by the acquiescence of the directors after they had knowledge of it. The claim is not put forward that they directly and formally acted on the matter at a board meeting. The contention is there was an inferential ratification because they made no protest and became purchasers at the trustee's sale. But it has been ruled that for unauthorized acts of this character to be made binding and valid, they must be ratified by the directors afterwards in the same manner they are required to be ordered beforehand. It was said by our Supreme Court, in a case similar to this one: "The members of a board severally could not ratify the assignment, because they could not in the first place have made it in their individual capacity, but only as a board; and not otherwise could they ratify it so as to affect this plaintiff." Calumet Paper Co. v. Haskell Show Printing Co., 144 Mo. 331. Perhaps a less formal assent by the directors may suffice to bind the corporation itself; especially if it accepts benefits under the irregular contract. But this is the case of a corporate creditor endeavoring to charge property claimed to have been transferred by an act invalid when done, and on the strength of the decision above cited, we hold the deed of trust in question was never ratified by the directors of the Canmann-Voelkers Fish Company. Such being

the case, and inasmuch as it was otherwise unwarranted, there being neither express nor implied authority for it, it remained voidable at the instance of the company's creditors, on account of the infirmity in its execution. One of the relators, L. P. Canmann, had actual knowledge of the facts, as he executed the instrument himself. The goods afterwards sold by virtue of its provisions, by the trustee, were mostly purchased by Charles Voelkers and O. G. Canmann, and were put into the Canmann Fish Company by them to pay up its capital stock; nearly the whole of which was owned by Voelkers and L. P. Canmann. If the goods in controversy came from the Canmann-Voelkers Fish Company, they were therefore included in those thus used to pay for stock in the second company. Both Voelkers and O. G. Canmann knew when they bought these goods, of the defective execution of the instrument under which they purchased, for both were directors of the other company when it was made. It thus conclusively appears that if this merchandise originally belonged to the Canmann-Voelkers Fish Company, it was acquired by the last-named persons at the deed of trust sale with knowledge of the infirmity in the trustee's title, and taken by the Canmann-Fish Company from them with notice; because L. P. Canmann and Voelkers were two of its stockholders and directors. Heisel also held a small interest equal to the amount for which he was secured in the deed of trust. It was purchased from the last-named company by the relators, of whom one was L. P. Canmann. Where, then, is there an ignorant or innocent grantee through whom these relators could claim to have acquired a bona fide title? Relators were in partnership at the time they bought out the Canmann company, and the knowledge of L. P. Canmann concerning the deed of trust, is imputed to all the others. Hall v. Goodnight, 138 Mo. 576; Burritt v. Dickinson, 8 Cal. 113; Bigelow v. Henniger, 33 Kas. 362;

Baugher's Excrs. v. Duphorn, 9 Gill. 314; Watson v. Wells, 5 Conn. 468; Herbert v. Odlin, 40 N. H. 267.

No evidence appears in the record tending to show the indebtedness in favor of the directors of the Canmann-Voelkers Fish Company, which was secured by the deed of trust, was bona fide, nor to overcome the presumption that said deed was prima facie fraudulent. Schufeldt v. Smith, 131 Mo. 280. The burden of showing it to be honest was on those claiming under it, of whom one was the relator, Canmann. This was directly ruled in an identical case. State ex rel. v. Rubber Mfg. Co., 149 Mo., supra.

We think, therefore, on the undisputed testimony, the merchandise was subject to process at the instance of creditors of the Canmann-Voelkers Fish Company, in the hands of this relator, if it ever belonged to said company; and any error which the court may have committed in the instructions in regard to the deed of trust or the admission of testimony, could not have affected the result detrimentally to the rights of the appellants.

The judgment is therefore affirmed.    All concur.